IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
December 4, 2013

## STATE OF TENNESSEE v. ALVIN BREWER and PATRICK BOYLAND

**Direct Appeal from the Criminal Court for Shelby County**
**No. 11-02360 & 11-02361     James C. Beasley, Judge**

**No. W2012-02281-CCA-R3-CD  - Filed April 24, 2014**
**No. W2012-02282-CCA-R3-CD  - Filed April 24, 2014**

In this consolidated appeal, the defendants, Alvin Brewer and Patrick Boyland, stand convicted of multiple crimes in two separate cases. In case number 11-02360, defendant Brewer was convicted by a jury of two counts of false imprisonment, two counts of robbery, one count of aggravated burglary, and one count of assault. Defendant Boyland was convicted of two counts of false imprisonment, one count of robbery, one count of facilitation of robbery, one count of aggravated burglary, and one count of assault. Each received effective twenty-eight year sentences as Range II multiple offenders. In this case, both have raised the following issues for review on appeal: (1) whether the trial court erred by failing to charge criminal attempt to the jury when the proof of a completed robbery was controverted and not overwhelming; (2) whether the trial court erred by improperly commenting on the evidence by referring to the home residents as "victims" in the jury charge; (3) whether there is sufficient evidence to support the convictions; and (4) whether the trial court erred in failing to force the State to make an election as to the aggravated assault charge when the proof presented showed two separate assaults. Following review, we have concluded that no reversible error has been established and affirm the judgments and resulting sentences. However, the judgment for facilitation of robbery in Count 4 for defendant Boyland incorrectly indicates that he was convicted of a Class C felony. In actuality, it should reflect conviction of a D felony, and we remand for entry of a corrected judgment form.

In case number 11-02361, the defendants incurred multiple convictions. Defendant Boyland was convicted of especially aggravated kidnapping, aggravated robbery, aggravated burglary, employing a firearm during the commission of a dangerous felony, and three counts of facilitation of aggravated assault. During the motion for new trial hearing, the trial court granted a motion for judgment of acquittal with regard to the especially aggravated kidnapping conviction. Following a sentencing hearing, defendant Boyland was sentenced to an effective forty-eight year sentence. Defendant Brewer was convicted of especially aggravated kidnapping, aggravated robbery, aggravated burglary, employing a firearm during

the commission of a dangerous felony, and three counts of aggravated assault. As with defendant Boyland, the trial court granted a motion for judgment of acquittal with regard to the especially aggravated kidnapping conviction, and defendant Brewer was sentenced to an effective forty-eight year sentence in the Department of Correction. On appeal, the defendants argue: (1) that the employing a firearm offense is void for failure to allege a predicate felony; (2) alternatively, that the firearm conviction should be reversed because the trial court improperly instructed the jury and provided improper verdict forms; (3) that the trial court erred in allowing a witness to testify in violation of rule 404(b); (4) that the evidence is insufficient to support the convictions; (5) that the trial court erred in refusing to merge the conviction for aggravated robbery with the convictions for aggravated assault and facilitation of aggravated assault, respective to each defendant, in violation of double jeopardy protections; (6) alternatively, that if merger is not applicable, then the trial court erred in failing to compel an election for the aggravated assault and facilitation of aggravated assault; and (7) that the trial court erred in allowing Mr. Clarence Mann to testify when his name was not endorsed on the indictment. Additionally, the State raises an issue for appeal, that being that the trial court erred in granting the motion for judgment of acquittal with regard to the especially aggravated kidnapping convictions of both defendants. Following review, the convictions for each defendant for employing a firearm during the commission of a dangerous felony are reversed. Moreover, we have determined that the court did erroneously refuse to merge defendant Boyland's conviction for facilitation of aggravated assault and defendant Brewer's conviction for aggravated assault into their respective aggravated robbery convictions. Moreover, the judgment of conviction form for defendant Brewer's aggravated assault conviction in Count 8 fails to specify a release eligibility. Additionally, the trial court's granting of motions for judgment of acquittal as to the charge of especially aggravated kidnapping for both defendants is reversed, and the judgments should be re-instated. As such, the case is remanded for sentencing on the especially aggravated kidnapping convictions and for further proceedings and actions necessary in accordance with this opinion. The convictions and sentences are affirmed in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part, Reversed in Part, and Remanded in Part**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JEFFREY S. BIVINS, JJ., joined.

Harry E. Sayle, III, Assistant Public Defender (on appeal) and Lawrence Russell White, Assistant Public Defender (at trial), for the appellant, Alvin Brewer.

Neil Umsted, Memphis, Tennessee, for the appellant, Patrick Boyland.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney

General; Amy P. Weirich, District Attorney General; and Pamela Fleming and Jose Leon, Assistant District Attorney Generals, for the appellee, State of Tennessee.

## OPINION

The several charges for which the defendants stand convicted arose from their involvement in two separate home invasion robberies. Both cases involved multiple victims. The first robbery occurred on October 31, 2010, and the second occurred on November 11, 2010. The defendants were tried jointly in both cases, and the cases have been consolidated on direct appeal. We will review each case separately and distinctly, as each presents different issues for review and a different factual basis.

## I. Case number 11-02360

### Factual Background and Procedural History

On October 31, 2010, Ricky Arnold , ("victim Arnold") was residing in an apartment with his girlfriend, Chanta Cox, ("victim Cox"). Around 10:30 or 11:00 p.m., he went outside the apartment to smoke a cigarette, and he observed a red, two-door Ford Explorer that was backed into a parking spot and was still running. Victim Arnold also saw two men, later identified as the defendants, walking toward him. As they approached victim Arnold, one of the men pulled out a gun and put it to victim Arnold's head, striking him. The man demanded to know which apartment was his and then ordered victim Arnold inside, where he was forced to lie down on the living room floor. Before defendant Brewer entered the apartment, he put on latex gloves.

Defendant Brewer, armed with the gun, went into the bathroom where victim Cox was getting ready to go out. He grabbed her, hitting her in the face, and forced her to lay on the floor. Defendant Brewer asked her where her money was, and victim Cox told defendant Brewer that she had some money in her wallet. She directed defendant Brewer to a file cabinet, and he got approximately $300 or $350, her rent money. Defendant Brewer then forced her into the living room at gunpoint and forced her to lie near victim Arnold.

The defendants asked victim Arnold about drugs and money. Victim Arnold denied that he had either. At this point, defendant Brewer forced victim Arnold into the bedroom where defendant Brewer flipped the mattress and began ransacking the drawers. After finding nothing but a casino card with victim Cox's name on it, defendant Brewer returned victim Arnold to the living room where he was again forced to lie down on the floor.

2

While this was occurring, defendant Boyland escorted victim Cox into the kitchen and began searching there. He asked victim Cox for a plastic bag and removed several of victim Arnold's shirts from a closet, placing them in the bag. He then escorted victim Cox back to the living room where she again was made to lie down on the floor.

At this point, defendant Brewer spoke to victim Cox, referring to her by name and asking her if she remembered him. Because she was afraid of what he would do if she said yes, she told him that she did not recognize him. However, she did recognize him from a class that they had together in high school, although she could not recall his name. Defendant Brewer then told victim Cox to take off her clothes, saying "I have been wanting to see that body since high school." He later escorted her to the bedroom where he told her that "this ain't because of you." He said that victim Arnold owed him money. Defendant Brewer told victim Cox, "I know you know who I am and if I find out something about this, I'm going to kill you." Defendant Brewer then forced her to return to the living room.

With all four people now in the living room, the defendants again demanded money from victim Arnold. He again denied having any. He was then ordered to remove his clothes. When he removed his pants, some cash fell out of his underwear. Defendant Boyland struck victim Arnold in the back of the head with the gun while defendant Brewer retrieved the cash. The gun had been passed between the defendants during this entire episode.

Victim Cox told the men that they should hurry because her parents were on the way over to the apartment. Defendant Boyland got scared and told defendant Brewer that they should leave. The defendants took victim Arnold's money, victim Cox's money, a cell phone, and a taser. The entire event lasted between thirty and forty-five minutes.

Victim Arnold ran outside the apartment and observed the men leaving in the red Explorer. Victim Cox called 911, and officers responded to the scene. Victim Arnold was transported by ambulance to the hospital to have his head wound treated. Victim Cox remained at the apartment and spoke with the police. She identified defendant Brewer from her high school yearbook, which she gave to police. She later gave a formal statement to police. Police also went to the hospital and interviewed victim Arnold. He also identified defendant Brewer from a photo line-up.

Investigation later led to defendant Boyland, who was also identified by each victim. His aunt, Kimberly Tucker, owned a red two-door Ford Explorer and stated that defendant Boyland often drove it. She also related that he was staying with her during the week in October 2010. Both defendants acknowledged that defendant Brewer had also ridden in the Explorer.

3

A Shelby County grand jury returned an eight-count indictment charging the defendants with the aggravated kidnapping of victim Arnold and victim Cox, the aggravated robbery of victim Arnold and victim Cox, aggravated burglary, employing a firearm during the commission of a dangerous felony, and the aggravated assault of victim Arnold. A trial was held in July/August of 2012 at which the above facts were testified to by the victims. Both victims were vigorously cross-examined by each of the defense attorneys, who highlighted various inconsistencies in prior statements and testimony from the preliminary hearing.

Kimberly Tucker, defendant Boyland's aunt, was also called to testify. On cross-examination, she related that she attended the preliminary hearing in this case. She recalled that she went to the restroom to pray and overheard a woman, whom she later learned was victim Cox, crying while talking on the telephone with her mother. According to Ms. Tucker, victim Cox

> said that it didn't happen like they said it happened. He's making her say these things. She didn't want to say them. She wanted to leave. Her mom was telling her to leave, go ahead and leave. So she said she rode down here with Rick and Ricky don't want to leave, he wants to stay.

Ms. Tucker introduced herself and encouraged victim Cox to tell the truth. She testified that she took from the conversation that victim Cox and defendant Brewer had some sort of romantic involvement which angered victim Arnold. Ms. Tucker also testified that she related this information to defendant Boyland's lawyer, but no action was taken despite the fact that victim Cox's testimony was not in accord with her statements in the restroom.

Victim Cox was asked about this and testified that she was in the restroom on the telephone with her mother at the preliminary hearing. However, she denied telling her mother that victim Arnold was making her testify. She stated that she told her mother, "I had sympathy for them, I didn't want them to do that many years in jail for this petty mess[.]"

Sharon Townsend, victim Cox's mother, also testified, and she denied any knowledge of a relationship between her daughter and defendant Brewer. She did recall a phone call from her daughter at the preliminary hearing during which her daughter expressed sympathy for the defendants. She testified that she questioned how her daughter could feel sympathy after what had happened and urged her to tell the truth about what occurred.

Various police officers and investigators were also called to highlight portions of the

4

victims statements to the police, and the State rested. No defense proof was presented.

At the close of the State's proof, counsel for defendant Boyland made a motion to compel the State to elect which aggravated assault it was submitting to the jury. Counsel pointed out that there was evidence that victim Arnold was struck at both the beginning of the encounter and again right before it ended. The trial court denied the motion, noting that multiple blows over the course of the incident would constitute a single aggravated assault. In closing arguments, the State argued that the blow to victim Arnold's head at the end of the incident was the aggravated assault. Defendant Brewer did not file a similar motion.

Additionally, counsel for defendant Boyland requested that the jury be given an instruction on criminal attempt. The court denied the request, finding that there was no evidence of an attempt to commit especially aggravated kidnapping and aggravated robbery because the crimes were completed. Again, defendant Brewer did not make a request for the instruction.

In its charge to the jury, the trial court referred to "victim, Ricky Arnold" and "victim, Chanta Cox." No objection was made by either defendant.

The jury found defendant Brewer guilty of: (1) two counts of the lesser-included offense of false imprisonment; (2) two counts of the lesser-included offense of robbery; (3) aggravated burglary; and (4) the lesser-included offense of assault. Defendant Boyland was found guilty of: (1) two counts of the lesser-included offense of false imprisonment; (2) the lesser-included offense of robbery; (3) the lesser-included offense of facilitation of robbery; (4) aggravated burglary; and (5) the lesser-included offense of assault. Following a sentencing hearing, the trial court imposed effective twenty-eight year sentences for each defendant as Range II multiple offenders. The court further ordered that the sentences be served consecutively with the sentences imposed in case numbers 11-02361, 07-06892, and 06-06635. Following the denial of their respective motions for new trial,[1] each defendant filed a timely notice of appeal.

**Analysis**

In this case, each of the two defendants have raised four issues for our review[2]: (1)

---

[1]With the exception of the trial court's grant of the defendants' motions for judgment of acquittal on the especially aggravated kidnapping convictions.

[2]Defendant Brewer had adopted the facts, issues, and arguments submitted by defendant Boyland pursuant to Tenn. R. App. P. 27(j). The only exception to that adoption is that defendant Brewer submits

whether the evidence was sufficient to support the convictions; (2) whether the trial court erred in refusing to instruct the jury as to the law of criminal attempt as to the robberies; (3) whether the trial court improperly commented on the evidence by referring to Mr. Arnold and Ms. Cox as "the victims" in the written jury charge; and (4) whether the trial court erred in its denial of the motion to compel an election of offenses with regard to the aggravated assault.

## A. Sufficiency of the Evidence

First, the defendants challenge the sufficiency of the convicting evidence. Defendant Brewer contends that the evidence is lacking with regard to all of his convictions. However, defendant Boyland challenges only the two convictions for false imprisonment, the conviction for facilitation of the robbery of victim Cox, and the aggravated burglary conviction. "When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Dorantes*, 331 S.W.3d 370, 379 (2011); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[O]n appeal, the State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *Dorantes*, 331 S.W.3d at 379 (internal quotation omitted). It is the trier of fact who resolves all questions of witness credibility, the weight and value of the evidence, as well as all factual issues raised by the evidence. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Reviewing courts should neither re-weigh the evidence nor substitute their own inferences for those drawn by the jury. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

The trial court's approval of the jury's verdict accredits the State's witnesses and resolves all conflicts in the evidence in the State's favor. *State v. Moats*, 906 S.W.2d 431, 433-34 (Tenn. 1995). "Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005). These rules apply whether the verdict is predicated upon direct evidence, circumstantial evidence, or a combination of both. *Dorantes*, 331 S.W.3d at 379. In weighing the sufficiency of the evidence, circumstantial and direct evidence are treated the same, and the State is not required to exclude every reasonable hypothesis other than that of guilt. *Id*. at 381.

### 1. False Imprisonment

a separate argument with regard to sufficiency of the evidence.

6

First, both defendants contend that the evidence is insufficient to support the convictions for false imprisonment. They argue that the State failed to present specific proof to establish that the removal or confinement of victims Cox and Arnold exceeded that which was necessary to accomplish the incidental robberies.

A person commits the offense of false imprisonment if they knowingly remove or confine another unlawfully so as to interfere substantially with the other's liberty. T.C.A. § 39-13-302(a) (2010). In *State v. White*, 362 S.W.3d 559 (Tenn. 2012), our supreme court modified the applicable analysis in cases that involved dual criminal charges for a restraint-related offense, such as kidnapping or false imprisonment, and some accompanying underlying offense that necessarily also involves restraint as well, such as robbery. The court overruled *State v. Anthony* and its progeny and held that a properly instructed jury was the appropriate body to determine whether a separate restraint-related conviction could stand. *White*, 362 S.W.3d at 577. The court articulated an instruction on "substantial interference" to "ensure that juries return kidapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony." *Id*. at 578. The instruction promulgated identifies the following relevant factors:

> (1) the nature and duration of the victim's removal or confinement by the defendant; (2) whether the removal or confinement occurred during the commission of the separate offense; (3) whether the interference with the victim's liberty was inherent in the nature of the separate offense; (4) whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so; (5) whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and (6) whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offenses.

*Id*. at 580-81.

In this case, the jury was properly instructed pursuant to the *White* jury instruction.[3] Nonetheless, the defendants contend that the jury erred in finding sufficient proof to support the charge. Defendant Boyland argues that an analysis of the *White* factors should lead to

---

[3]The Committee on Criminal Pattern Jury Instructions subsequently adopted a pattern instruction as directed by the *White* court which is substantially similar to the temporary charge adopted by the *White* court. The trial court here utilized the pattern instruction in its charge to the jury.

a conclusion that convictions cannot be supported on the evidence presented. He contends that the evidence of removal or confinement was minimal with regard to victim Arnold as he "was only made to lay on the floor for a portion of the time" and that it ended with the robbery. With regard to victim Cox, defendant Boyland questions whether she was even confined because she was "watched" by the defendant not in possession of the weapon and was able to "freely" roam around the apartment. Even assuming confinement to victim Cox was established, defendant Boyland argues it was only done in furtherance of the robbery. Defendant Brewer simply maintains that the evidence presented did not establish "restraint in excess of that required to effect the robbery and burglary, so as to support the verdict on false imprisonment." We disagree with their arguments.

The evidence established that victim Arnold was approached outside and ordered at gunpoint into his apartment. He was forced to lie down on the floor while defendant Boyland kept watch. Defendant Brewer meanwhile proceeded to the bathroom, struck victim Cox, and forced her onto the floor. She was ordered to rise and get him money, which she did so from a filing cabinet in the bedroom. She was then forced back into the living room at gunpoint and ordered to lie on the floor. Victim Arnold was then forced to rise and proceed to the rear of the apartment while defendant Brewer ransacked the bedroom. Victim Cox was ordered up and taken into the kitchen where defendant Boyland conducted a search. Both victims were returned to the living room and ordered onto the floor. Then defendant Brewer ordered victim Cox to remove all her clothing because he wanted to see her body. He then forced her back into the bedroom and threatened to kill her if she related any of the evening's events. She was returned to the living room and again ordered onto the floor. After refusing the defendants' demand for money, victim Arnold was also ordered to remove his clothing.

In denying relief, the trial court found:

> [T]he proof was that [the defendants] entered into this apartment, and while in the apartment, the female victim was originally forced to strip naked and then placed on the floor during the course of the robbery and assault. And subsequently, Mr. Arnold was likewise forced to strip and both of them were left on the floor naked. Actually, I think Mr. Arnold . . . He was down to his underwear and they got the money out of his underwear and I don't recall whether he was actually forced to go any further or not.

> But I think under the circumstances of that particular case, that activity of going above and beyond what was necessary to commit the aggravated robbery that was occurring, I think the jury actually found them guilty of robbery.

8

I think it makes that case a little more unique in that that would tend to impede somebody's seeking assistance, the fact that they've been stripped naked and left in that state. . . .

I feel that the issue of false imprisonment, . . . I think there is enough of a distinction and a break based upon the facts of that particular case that when you take into account the fact that the victims were restrained a little bit further than that necessary to commit the offense by taking their clothes, I think is a little bit more of a unique distinction. And for that reason, I'm going to deny the request that false imprisonment is part in parcel to the robbery and the assault.

We agree. These events lasted thirty to forty-five minutes and covered every area of the house. The victims were forced to constantly change postitions and lie on the floor before being forced back up and escorted to another part of the home. The constant moving of the victims was not necessary to the completion of the robbery. One defendant could have easily remained with the victims while the other searched the house for what was to be stolen. Moreover, victim Cox was ordered to the bedroom so that defendant Brewer could threaten to kill her. Additionally, the removal of the clothing of the victims, as found by the trial court, served no purpose in furtherance of this robbery. Defendant Boyland's argument that victim Cox was not confined during the ordeal but was merely being "accompan[ied]" or "watched" by him as they "freely" roamed around the apartment belies the evidence presented at trial. Victim Cox was confined to her apartment with two men, one of whom was armed at all times, who demanded her possessions and forced her to strip naked to satisfy a high school fantasy. To accept that she was not confined would belie logic and reason.

Reviewing the evidence in the light most favorable to the State, we conclude beyond a reasonable doubt that a reasonable juror could have applied the instruction as given and concluded that the defendants had committed false imprisonment. There is evidence of movement or confinement above and beyond that necessary to complete the robbery. Thus, pursuant to our standard of review on sufficiency issues, we affirm the conviction as entered.

## 2. Defendant Boyland

### a. Facilitation of Robbery as to Victim Cox

Next, defendant Boyland argues that the evidence is insufficient to support this conviction because the State failed to establish that he had knowledge that defendant Brewer intended to rob victim Cox or that he knowingly furnished substantial assistance in the

9

commission of the robbery. A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under section 39-13-402(2), the person knowingly furnishes substantial assistance in the commission of the felony. T.C.A. § 39-11-403(a).

Defendant Boyland was originally charged in this count with one count of robbery, but he was convicted of the lesser-included offense of facilitation of the robbery of victim Cox. We do agree that defendant Boyland correctly stated that, simply because there is proof on the record which would support a conviction for the charged offense, *i.e.* robbery, the proper test in our review is whether the evidence is sufficient to support a conviction for the lesser included offense for which he was convicted. *See State v. Parker*, 350 S.W.3d 883, 909 (Tenn. 2011). However, we disagree with his assertion that the proof is not present on this record, as we conclude that the proof is sufficient to establish that defendant Boyland was aware that defendant Brewer intended to rob victim Cox and that he knowingly furnished substantial assistance in that robbery.

According to defendant Boyland's argument, the robbery by defendant Brewer of victim Cox was over before she was ever seen by defendant Boyland, and the proof does not establish that he knew that defendant Brewer intended to rob victim Cox in the bedroom. He further points out that after victim Cox was returned from the bedroom, the defendants only sought and demanded property from victim Arnold. Defendant Boyland maintains that the proof does not allow an inference that defendant Boyland knew that defendant Brewer intended to rob victim Cox, but, rather, at most an inference that defendant Boyland knew that she was in the bathroom. He continues and argues that "[e]ven if he did have knowledge of Brewer's intentions, the proof does not indicate that he knowingly furnished any assistance, much less substantial assistance."

We are unpersuaded by defendant Boyland's argument. As pointed out by the State, the evidence presented shows that the pair of defendants were functioning as a team in order to perpetrate this home invasion robbery. They worked in concert with each other while inside the apartment, passing the gun and victims back and forth between the two of them. Each performed specific duties to ensure that the robbery was completed. And, while that is sufficient to establish a robbery conviction, that is not the standard we must utilize because defendant Boyland was found guilty of facilitation of robbery. Nonetheless, we think that a reasonable juror could easily infer on this record that defendant Boyland was aware of what defendant Brewer's plan was, and that the plan was to rob any and all persons in the home, including victim Cox. It is a reasonable assumption on the part of the jury that these defendants were acting in concert and, thus, aware of the other's intent.

Likewise, we conclude that the jury could reasonably find that defendant Boyland

10

provided substantial assistance in the robbery of victim Cox. It was defendant Boyland who maintained guard over victim Arnold while defendant Brewer carried out the robbery of victim Cox. Had defendant Boyland not been present, it is quite possible that victim Arnold might have intervened in the robbery of his girlfriend. Viewing the evidence in the light most favorable to the State, a reasonable juror could find that defendant Boyland was in fact aware of why he was watching victim Arnold and what defendant Brewer was doing with victim Cox.

### 2. Aggravated Burglary

Lastly, defendant Boyland contends that the evidence is insufficient to support the conviction for aggravated burglary because the State failed to present proof that he entered the apartment without the effective consent of the owner. He contends that victims Cox and Arnold were never asked, and did not testify, that the defendants entered without their consent.

Aggravated burglary is the entry into a habitation, without effect consent, with intent to commit a felony. T.C.A. § 39-14-402, -403. "Effective consent" means assent in fact, whether express or apparent, including assent by one legally authorized to act for another. T.C.A. § 39-11-106(a)(9). Consent is not effective when induced by coercion. T.C.A. § 39-11-106(a)(9)(A).

We cannot agree with the defendant's argument. While the issue of consent may not have been directly addressed at trial, victim Arnold's testimony at trial is sufficient to support a finding that he did not willingly allow the two defendants into his apartment. He was approached by two strangers, hit on the head, held at gunpoint, and forced inside his own apartment. A reasonable juror could find that such coercive measures would be uncalled for if the victim was willingly consenting to allow the defendants to enter. The evidence is sufficient to support the conviction.

### 3. Defendant Brewer

As noted, defendant Brewer challenges each of his convictions on appeal. However, his entire argument in this regard is devoted to a challenge of the credibility of the victims. He points out numerous inconsistencies in the testimony and various statements made by the victims. He cites to no other reason that his convictions cannot stand other than that the victims' testimony "is rife with inconsistencies which raise reasonable doubt as to each and every element of the charges against" defendant Brewer.

As has been noted by this court upon multiple occasions, our function is not to

11

reweigh evidence or re-evaluate credibility determinations made by a jury. It is the jury, as the trier of fact, who is to weigh the credibility of witnesses and resolve inconsistencies in testimony. *Evans*, 108 S.W.3d at 236. The victims in this case were put through a vigorous cross-examination by counsel for both defendants. Inconsistencies between statements, testimony, and interviews were placed squarely before the jury in an attempt to damage the credibility of the victims. The jury, based upon its verdict, chose to accredit the testimony of victims Arnold and Cox in spite of these inconsistencies. That is the function the jury serves. We will not disturb its findings on appeal. We conclude the evidence is sufficient to support all the convictions.

## B. Failure to Charge Criminal Attempt

Both defendants claim that the trial court "erred when it denied the . . . timely motions to instruct the jury as to the law of criminal attempt as to the robberies of Cox and Arnold when the proof of a completed robbery was controverted and not overwhelming." Defendant Boyland filed a pre-trial motion in writing requesting a criminal attempt charge as to each charged offense and raised the issue in his motion for new trial. Defendant Brewer, however, did not raise the issue at trial or in the motion for new trial, which he acknowledges in his brief.

A trial court has a duty to provide "a complete charge of the law applicable to the facts of the case." *State v. James*, 315 S.W.3d 440, 446 (Tenn. 2010) (quoting *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986)); *see also* Tenn. R. Crim. P. 30(d)(2). The trial court must provide an instruction on a lesser included offense supported by the evidence even if such instruction is not consistent with the theory of the State or the defense. *State v. Allen*, 69 S.W.3d 181, 187-88 (Tenn. 2002). A trial court's failure to instruct the jury on a lesser included offense is reversible error when: (1) the offense qualifies as a lesser included offense; (2) the evidence supports an instruction on the lesser offense; and (3) the instructional error is not harmless beyond a reasonable doubt. *Id*. at 187.

Under the *Burns* test, an offense is a lesser included offense if it meets the following requirements:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing (1) a different mental state indicating a lesser kind of culpability; and/or (2) a less serious harm or risk of harm to the same person, property or public interest; or (c) it consists of (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

12

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

*State v. Burns*, 6 S.W.3d 453, 466-67 (Tenn. 1999). Furthermore, our supreme court stated in *Burns* that a lesser included offense instruction is not required unless the particular facts of the case would support a jury conviction on that charge. *Id.* at 469.

If a court determines that an offense is a lesser included offense, the trial court must conduct the following two-step analysis in order to determine whether the lesser included offense instruction should be given. First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser included offense. *Id.* at 464. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense. *Id.* at 469. The Tennessee Supreme Court has noted that "where the evidence clearly establishes the completion of the crime, it is unnecessary for the trial court to charge the jury as to attempt." *State v. Banks*, 271 S.W.3d 90, 127 (Tenn. 2008). This court has held "that the trial court is not obliged to give the lesser included offense instruction where there is no evidence of the lesser included offense *other than* the very same evidence which supports the greater offense, that is, 'that reasonable minds could accept as to the lesser included offense.'" *State v. Lewis*, 36 S.W.3d 88, 100 (Tenn. Crim. App. 2000).

If a trial court improperly omits a lesser included offense instruction, constitutional harmless error analysis applies, and the State must show that the error did not affect the outcome of the trial beyond a reasonable doubt. *State v. Ely*, 48 S.W.3d 710, 725 (Tenn. 2001). "In making this determination, a reviewing court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." *Allen*, 69 S.W.3d at 191.

On appeal, "[t]he question whether a given offense should be submitted to the jury as a lesser included offense is a mixed question of law and fact." *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001) (citing *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001)). The standard of review on appeal is de novo. *Burns*, 6 S.W.3d at 461.

Because inchoate offenses such as attempt are considered lesser included offenses of the crime charged, the crime of attempted robbery in this case is considered to be a lesser included offense of the charged crime of robbery. *See Burns*, 6 S.W.3d at 466-67. Thus, we

13

begin our analysis with the question of whether the proof supported the charge of attempted robbery on the facts of the case.

### 1. Defendant Boyland

According to defendant Boyland, "[a] liberal review of this proof shows that evidence existed which reasonable minds could have accepted to show that [defendant] Boyland intended to commit a robbery, took substantial steps towards completing that robbery, but left the scene without any property thus failing to accomplish the intended act." He argues that, although witnesses testified that the defendants ransacked the house and took various items of property, the defendants challenged this claim through cross-examination using several inconsistent prior statements and crime scene photos which showed that several of the items claimed to have been taken remained in the apartment. In particular, defendant Boyland relies upon a statement made by victim Arnold, that being "[t]hey tore the house up asking for money and drugs, they ain't find nothing, after awhile, they stayed in there a good thirty minutes, but then after that, they left." He also points out his own statement made in response to the information that victim Cox's parents were en route to the apartment, "Come on, brother, let's go, let's go, before somebody walks up in here." He contends that "[b]ased on this controverted and underwhelming proof of a completed robbery, the [j]ury could have reasonably conclude[d] that the [d]efendants escaped from the apartment in a hurry and without any property when victim Cox stated her parents were coming." Based upon this argument, defendant Boyland maintains that he was entitled to an attempt charge.

Our review of the record does not support defendant Boyland's contention, and we conclude that he was not entitled to the charge. The trial court noted when addressing the issue that there was proof either of a completed robbery by the defendants or that the defendant did not commit the robbery at all. The court went so far as to note that if a jury convicted the defendants of attempted robbery, he would not uphold the verdict as the thirteenth juror. We agree with the trial court that an attempt instruction is necessary under *Burns* only when there is a factual situation where some evidence indicates that the charged offense was not completed at all.

We agree with the State that there was no evidence controverting victim Arnold's trial testimony that the defendants stole money from him. Nor was there any testimony or proof elicited which controverted the evidence that the defendants took victim Cox's rent money. Defendant Boyland's reliance upon the statement credited to victim Arnold is misplaced. That statement was not made at trial, but rather at the preliminary hearing. It was introduced at trial only through trial counsel's attempt to discredit the victim. It was introduced to contradict victim Arnold's testimony immediately preceding it that the defendants had taken drugs from his apartment. It was made in the course of an explanation of why his statements

14

were not consistent. That one isolated statement is simply not enough to conclude that proof of an attempt was presented. Nor is the fact that victim Cox told the police that certain items were taken, *i.e.* her wallet, and crime scene photos showed that it remained, sufficient to establish proof that only an attempt occurred. Likewise, the same is true of the other crime scene photos and the response by defendant Boyland upon learning that victim Cox's parents were expected to arrive. There is simply no evidence presented that an attempted robbery occurred.

The defendants proceeded under a theory that the victims were untruthful and that no robbery occurred. Their extensive cross-examination was directed at establishing just that. We do agree with defendant Boyland that a "trial court must provide an instruction on a lesser-included offense supported by the evidence even if such instruction is not consistent with the theory of the State or the defense." *Allen*, 69 S.W.3d at 187-88. However, we cannot conclude on this record that an attempt offense was supported by the evidence.

Counsel for defendant Boyland has gone through the transcript and picked out statements which he asserts support the claim that an attempt charge should have been given. Taken totally in isolation, the statements might lend some credence to that theory. However, when viewed in the context in which they were made, it is simply not proof of an attempt. The facts adduced at trial, in any light that the jury may have chosen to view them, did not warrant an instruction for attempt. The trial court did not err by declining to instruct the jury on attempted aggravated robbery. Because we conclude that the trial court did not err in its determination that proof of an attempt was absent, harmless error analysis is unnecessary.

### 2. Defendant Brewer

As noted, defendant Brewer did not raise this issue previously. Tennessee Code Annotated section 40-18-110(a) and (b) provides that a party in a criminal case must submit to the trial court in writing a request for a lesser included offense instruction and that in the absence of such a request, the party is not entitled to the instruction. Further, when the request for a lesser included offense instruction is not made in writing, the issue is waived and may not be presented as a ground for relief in a motion for new trial or on appeal. T.C.A § 40-18-110(c); *State v. Page*, 184 S.W.3d 223, 230 (Tenn. 2006) (upholding Tenn. Code Ann. § 40-118-110(c) against constitutional challenge). Waiver aside, our supreme court has held that appellate courts are not precluded from reviewing this issue under the plain error doctrine. *Page*, 184 S.W.3d at 230. Tennessee Rule of Appellate Procedure 36(b) provides that "[w]hen necessary to do substantial justice, [this] court may consider an error that has affected the substantial rights of a party at any time, even though the error was raised in the motion for new trial or assigned as error on appeal." *See also* Tenn. R. Evid. 103(d). This court may only consider an issue as plain error when all five of the following factors are met:

15

(1) the record must clearly establish what occurred in the trial court;

(2) a clear and unequivocal rule of law must have been breached;

(3) a substantial right of the accused must have been adversely affected;

(4) the accused did not waive the issue for tactical reasons; and

(5) consideration of the error is "necessary to do substantial justice."

*State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted); *see also State v. Smith*, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting the *Adkisson* test for determining plain error). Furthermore, the "plain error must be of such a great magnitude that it probably changed the outcome of the trial." *Adkisson*, 899 S.W.2d at 642 (internal quotations and citation omitted).

It is the accused's burden to persuade an appellate court that the trial court committed plain error. *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). Further, complete consideration of all five of the factors is not necessary when it is clear from the record that at least one of them cannot be satisfied. *Smith*, 24 S.W.3d at 283. The Advisory Commission Comments to Tennessee Rule of Appellate Procedure 13(b) suggest that the discretionary authority for the declaration of plain error "be sparingly exercised."

As adduced upon review of the issue for defendant Boyland, we have concluded that no proof was presented of a crime which was attempted - only that of a completed crime. As the State notes, there was proof that *some* of the items initially reported stolen were in fact not removed from the home. However, there was no proof presented that *nothing* was stolen. Based upon that conclusion, defendant Brewer cannot show a breach of a clear and unequivocal rule of law. As such, no substantial right of defendant Brewer was adversely affected, and review of the alleged error is not necessary to do substantial justice.

**C. Reference to "Victim" in the Charge**

Next, the defendants argue that the trial court committed reversible error when it improperly commented on the evidence and referred to Mr. Arnold and Ms. Cox as "victims" in the charge to the jury. The following statements were made by the court, orally and in the written charge, to the jury:

> Members of the Jury the indictment in this case contains eight counts. You must return a verdict as to each count. You will have eight verdicts.
> Count one and two charge the offense of Especially Aggravated Kidnapping. Count one applies to victim, Ricky Arnold, and count two applies to victim, Chanta Cox. . . .

16

Count three and four charge the offense of Aggravated Robbery. Count three applies to the victim, Ricky Arnold, and count four applies to the victim Chanta Cox. . . .

Defendant Boyland objected to the court's characterization of the parties as "victims." Despite his concession to the contrary, Defendant Brewer also appears to have posed an objection. However, the issue was not raised in his motion for new trial. The objection was overruled by the trial court. The defendants argue that the court violated their constitutional right by labeling Mr. Arnold and Ms. Cox as "victims" to the jury, especially when the defense theory was that the allegations were false and the two were not in fact "victims" of a crime.

Article VI, § 9 of the Tennessee Constitution provides "[t]hat judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law." This provision aims to avoid giving "the jury any impression as to [the judge's] feelings or to make any statement which might reflect upon the weight or credibility of evidence or which might sway the jury." *State v. Suttles*, 767 S.W.2d 403, 407 (Tenn. 1989). "These purposes are accomplished by preventing the trial court from . . . instructing the jury concerning the factual conclusion to be drawn from the evidence." *State v. Odom*, 928 S.W.2d 18, 32 (Tenn. 1996). It has been held previously that when a trial court improperly comments on the evidence, appellate courts "must consider the trial court's comment in the overall context of the case to determine whether the comment was prejudicial." *Mercer v. Vanderbilt University, Inc.*, 134 S.W.3d 121, 134 (Tenn. 2004) (citing *State v. Caughron*, 855 S.W.2d 526, 536-37 (Tenn. 1993)). However, because it is a non-structural constitutional error, it is subject to harmless error review. *State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008). If error is established, the State then bears the burden of establishing that the error was harmless beyond a reasonable doubt. *Id.*

The defendants concede that this precise issue has never been addressed in a Tennessee court. Instead, our attention is directed to two out of state cases, those being *State v. Nomura*, 903 P.2d 718 (Haw. Ct. App. 1995) and *Jackson v. State*, 600 A.2d 21, 24 (Del. 1991). In those two cases, there is support that the term "victim" "is conclusive in nature and connotes a predetermination that the person referred to had in fact been wronged. *Nomura*, 903 P.2d at 721. Thus, that court concluded that the term should not be used by the trial court when charging the jury. *Id.*; *see also Jackson*, 600 A.2d at 24. The determination of whether a person is in fact a "victim" of a crime is a factual determination to be made by the jury. *Jackson*, 600 A.2d at 24. Nonetheless, in the *Nomura* case, despite finding the reference to be error, the error was determined to be harmless when coupled with instructions dissipating the harmful effect. *Nomura*, 903 P.2d at 718.

This record established that improper comments on the evidence did occur in this case. A trial court should not make statements that appear to be factual determinations and refer to the alleged victim as a "victim." It is for the jury to determine if the person was in fact the victim of a crime.

The defendants argue that the error was not harmless beyond a reasonable doubt. In support of that argument, they rely upon the fact that: (1) it appeared in a critical portion of the instructions which were likely to be referred to by the jury; and (2) that the defendants were acquitted or convicted of lesser offenses on all the other counts in the indictment which did not make reference to a "victim."

The State, on the other hand, contends that the reference was harmless beyond a reasonable doubt, noting that the reference was brief and that the court later referred to Mr. Arnold and Ms. Cox repeatedly as "alleged victim[s]" in the charge to the jury. The State also includes in its brief a list of other comments made by the court which it contends negated the harmful effect of the error:

> The trial court stated in its closing instructions that it was not "indicat[ing] any opinion as to the fact or as to what [the jury's] verdict should be" by "any other remarks which [it had] made." The trial court noted that the jury should allow no sympathy or prejudice or anything but the law and the evidence to have any influence on it in determining its verdict. The trial court instructed the jury that it was "the sole judges of the facts and of the law as it applies . . . to the facts of the case," "[t]he law presumes that the defendant is innocent of the charges against him," "the Jury[] must enter upon this investigation with the presumption that the defendant is not guilty of any crime," "[t]he State has the burden of proving the guilt of the defendant beyond a reasonable doubt," and that "[t]he defendant is presumed innocent and the burden is on the State to prove his guilt beyond a reasonable doubt." The trial court also instructed the jury that it did not have to believe any of the witnesses' testimony.

The defendants respond that, to conclude that this, in effect, cured the error would permit "the trial court to generally disclaim any perceivable comment on the evidence, and then proceed to label the [S]tate's witnesses as victims . . . ."

We are unable to find merit in the defendants' argument. While we agree that it was an improper comment on the evidence to refer to Mr. Arnold and Ms. Cox as victims, the comment was made in a very contained and small section of the charge. We cannot conclude, despite the defendants' urging, that this portion of the charge was "the roadmap

by which the jury analyzed the proof and the charges." We see no greater import in this section than in the section where the court properly referred to Mr. Arnold and Ms. Cox as "alleged victims." When taken in conjunction with the other statements made by the trial court in the charge, we conclude that the harmful effect of the minor reference was dissipated by the later comments made by the trial court because it must be presumed that jurors understand and follow the court's instructions. *See Mercer*, 134 S.W.3d at 134.

Again, review of this issue with regard to defendant Brewer must be pursuant to plain error review, as the issue was not raised in his motion for new trial. As with the first issue raised, having concluded that the error does not entitle defendant Boyland to relief, we must also conclude, pursuant to plain error review, that defendant Brewer is also not entitled to relief.

### D. Election

The last issue raised by the defendants in this case involves election. The defendants contend that the trial court committed reversible error when it denied the motion to compel an election as to the aggravated assault charge when the State presented evidence of one assault which occurred at the beginning of the encounter and a second assault at the end of encounter, approximately thirty minutes later.

When the State presents proof of multiple instances of conduct that match the allegations contained in a charging instrument, the State must "elect" the distinct offense about which the jury is to deliberate in returning its verdict as to each specific count. *State v. Adams*, 24 S.W.3d 289, 294 (Tenn. 2000). The primary purpose for the election requirement is to ensure that the jury is deliberating about a single instance of alleged criminal conduct so that the jury may reach a unanimous verdict. *State v. Shelton*, 851 S.W.2d 134, 137 (Tenn. 1993). The election requirement ensures "that the jury does not reach a 'patchwork verdict' of guilt based on different offenses." *State v. McCary*, 119 S.W.3d 226, 241 (Tenn. Crim. App. 2003) (citing *State v. Forbes*, 918 S.W.2d 431, 445-46 (Tenn. Crim. App. 1995)). An error involving election is a non-structural constitutional error that requires reversal unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Shelton*, 851 S.W.2d 134, 138 (Tenn. 1993).

It has been held that "if the defendant's actions resulted in two assaults, the trial court should have addressed the issue by requiring an election and/or by imparting an enhanced unanimity instruction to the jury[.]" *Larry Darnell Pinex v. State*, No. M2009-00675-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 203, *9 (Tenn. Crim. App. Mar. 5, 2010). However, this court has held that a trial court's error in not instructing the jury about the State's election of offenses may be harmless "where the prosecutor provides during closing

argument an effective substitute for the missing instruction." *State v. Adrian Keith Washington*, No. M2008-01870CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS, *15 (Tenn. Crim. App. Feb. 24, 2010), *perm. app. denied* (Tenn. Aug. 26, 2010).

Count eight of the indictment charged that the defendants did "commit an assault on [the victim] and use or display a deadly weapon and cause the said [victim] to reasonably fear imminent bodily injury[.]" The defendants were convicted of the lesser offense of assault. As noted from our review of the proof, it appears that the two defendants approached victim Arnold outside and struck him with the gun before forcing him inside the apartment. There is also proof that victim Arnold was pistol-whipped with that same gun some thirty minutes later inside the apartment. Despite defendant Boyland's request for an election of offenses, the trial court found that none was necessary. The court reasoned that it was a continuing course of conduct which did not require the State to elect the exact assault they were relying upon.

We disagree with that conclusion. It appears that there were two distinct assaults committed against victim Arnold by the defendants, which were separate in time. Thus, election would have been proper.

The defendants further argue that the error is not harmless beyond a reasonable doubt. It is pointed out that the proof was not overwhelming, as reflected by the jury's finding of a lesser included offense rather than the charged offense. However, the defendants' initial argument ignores caselaw which has concluded that if the State specifically argues for a particular event in its closing argument that the failure to elect is harmless. *State v. William Darryn Busby*, No. M2004-00925-CCA-R3-CD, 2005 Tenn. Crim. App. LEXIS 289, *16 (Tenn. Crim. App. Mar. 29, 2005); *State v. Michael J. McCann*, No. M2000-2990-CCA0R30CD, 2001 Tenn. Crim. App. LEXIS 840 (Tenn. Crim. App. Oct. 17, 2001); *State v. William Dearry*, No. 03C01-9612-CC-00462, 1998 Tenn. Crim. App. LEXIS 165 (Tenn. Crim. App. Feb. 6, 1998), *perm. app. denied*, (Tenn. Jan. 19, 1999). Nonetheless, in his reply brief, defendant Boyland does acknowledge that law, but he argues that the State did not expressly state and argue for a particular assault. He points to various references by the State to the initial strike against victim Arnold and contends that those statements, read together with the entire closing argument, fail to adequately convey which aggravated assault they were submitting to the jury. He maintains that the closing argument was not an "effective substitute" for a missing election instruction.

Our review of the record reveals the following references to the assault conviction contained within the State's closing arguments:

. . . He's hit in the head with [the gun]. It's hard enough to leave a knot

on his head.

. . . .

. . . And, he had already been hit in the head once with the gun, so there's violence involved.

. . . .

[A]ggravated assault. This is only to Mr. Arnold; it is not to Ms. Cox. When Ms. Cox was originally hit, that was all part of getting to the robbery, or the especially aggravated kidnapping. The defendant or someone from whom he's criminally responsible intentionally or knowingly caused another one to fear, reasonably fear, imminent bodily injury and used or displayed a deadly weapon. The difference with Mr. Arnold is Mr. Arnold was hit for retaliation. He was hit because they were angry. They had demanded money from them and he had tried to hide it and when they found out he had the money, they took the money. Everything's accomplished at that point but they are mad and they strike him in the head because of it. Making comment of: you're trying to be slick or something along that line, and they take that gun and they hit him in the head. A deadly weapon, certainly had every reason to fear imminent bodily injury, he was suffering bodily injury at the time.

. . . .

An aggravated assault. Lesser included is assault. That means you didn't have to have a gun. You caused somebody to reasonably fear imminent bodily injury, but you didn't have a gun. It's not a menu, he started the first blow.

. . . .

Mr. [Brewer] [hit] him in the back of the head. What would you expect to see if he's been hit in the back of the head? A knot. Everybody that saw him testified that he had one.

In the rebuttal argument, the State stated as follows with regard to the aggravated assault charge:

They'd make up this elaborate story, not that you're sitting in there

21

watching T.V. and people break in on you, but you're brought in from the parking lot, you're hit in the head, your girlfriend is in another room and they've got to go all the way in there and get her and put her down and do all that stuff to her in there. Why make it so elaborate? It doesn't make sense. If you've got that kind of talent, shoot write a novel.

. . . .

And the facts of this case are every single time these two victims have been asked by anybody, they have said: I was outside, I was hit in the head with a gun and forced inside, I was put on the ground; my girlfriend was gotten from the bathroom; girlfriend's in the bathroom; guy comes up; hits me; forces me down; demands the money; takes me where the money is; gets the money and brings me back. . . .

. . . .

And, Mr. Arnold had the misfortune of being outside, they came up to him, they hit him with a gun, they forced him in his own home, they put him on the ground, they went and they got Ms. Cox, got he[r] from the bedroom, hit her, put her on the ground, got her money from her, took her back inside, ram shacked [sic] the house, asked Mr. Arnold to strip, took his money from him, struck him some more with the gun, made her strip and then they took off in that red Ford Explorer. That's what happened beyond a reasonable doubt. . . .

While we do acknowledge that scant references to the initial hit to victim Arnold make it less than perfectly clear, when reading the closing argument as a whole, we conclude that the State did argue exclusively in its closing argument for the aggravated assault which occurred near the end of the encounter inside the apartment. When addressing each specific charge to the jury, the State made clear that it was relying on the strike that occurred in retaliation. The State even distinguished why the hit against victim Cox was not assault as it was part of the robbery. The jury would obviously infer that the same applied to the initial assault of victim Arnold. Having so concluded, we must conclude that any error resulting from the failure to elect was harmless beyond a reasonable doubt.

We again note that defendant Brewer failed to raise this issue at trial or in his motion for new trial. As such, the standard of review employed for his case was that of plain error. *See* Tenn. R. App. P. 36(a); Tenn. R. App. P. 3(e). Clearly, plain error cannot be found on this record, as we have reviewed the issue pursuant to defendant Boyland's argument and

22

concluded that no relief is warranted.

## II. Case Number 11-02361

### Factual Background and Procedural History

On November 11, 2010, between 8:00 and 10:00 p.m., victim Edward Mann[4] ("victim Edward") heard tires screeching outside his home, which was in a normally calm neighborhood. Victim Edward looked out the window and saw a red Ford Explorer turn in and park. He then saw two men exit the vehicle and approach and knock on the door of a neighboring house. He observed that one of the men waited in the bushes while the other knocked on the door. After receiving no response at the door, the two men then approached victim Edward's front door. Victim Edward opened his door and asked the two men who they were looking for. One of the men, later identified as defendant Boyland, who was wearing a University of Memphis hooded sweatshirt, started to answer in what appeared to be an attempt to stall. The second man, later identified as defendant Brewer, came from the side straight through the door and struck victim Edward on the head with a gun, knocking him to the ground. Defendant Brewer demanded, "where's the money, where's the money, where's the money."

Victim Edward said that defendant Boyland, armed with a revolver, entered the living room where victim Edward's father, Mr. Clarence Mann, was watching television. Meanwhile, defendant Brewer took victim Edward upstairs with a gun to the back of his head. Defendant Brewer was still demanding money. Victim Edward's mother, victim Peggy Mann ("victim Peggy"), had come out of her room as victim Edward was being forced upstairs and defendant Brewer was asking where the money was. Defendant Brewer ordered victim Peggy back into her room, stating that he would shoot her if she failed to comply. Defendant Brewer and victim Edward continued to his room, and, once in the room, victim Edward gave defendant Brewer approximately $1,000, his birthday money. Defendant Brewer ordered victim Edward to his knees and threatened to kill him. At the same time, victim Peggy aggressively approached defendant Brewer, stating, "[Y]ou ain't fixing to kill my son." Victim Edward remained on his knees for "approximately seven or eight seconds" after he surrendered his money to defendant Brewer. Defendant Brewer then turned and demanded that victim Peggy leave the room or else he would shoot her. She managed to draw defendant Brewer into the hallway. Victim Edward then pushed defendant Brewer down the stairs, and the gun discharged repeatedly as he fell.

---

[4]The multiple victims in this case each share the same surname. In an effect to avoid confusion, we will refer to the victims by their first names.

23

At some point during the altercation in the hallway, victim Edwards's brother, victim Yanike Mann ("victim Yanike"), heard the noise and came out of his room armed with a samurai sword, which he brandished at defendant Brewer. In response, defendant Brewer pointed his gun at victim Yanike, who returned to his bedroom and called 911, before attempting to escape out of his bedroom window. While looking out the window, he observed the defendants fleeing through the backyard.

While these events were occurring, Mr. Clarence[5] had been approached by defendant Boyland in the living room. He was ordered at gunpoint to lie on the living room floor, and defendant Boyland demanded his money. Mr. Clarence gave him $10 and his credit cards, and he denied that he had any drugs in response to defendant Boyland's question. Mr. Clarence heard a rumbling on the stairs, followed by a shot. At this point, defendant Brewer ran into the room and stated that they needed to get out. The two defendants then ran through the den and kitchen in an attempt to run out of the garage. However, they were unable to escape through the garage and then ran out the back den door into the back yard.

Mr. Clarence then came up to the steps and informed his family that the assailants were gone, and he called the police. The police arrived and secured the red Ford Explorer that the defendants had arrived in. Defendant Boyland's work identification badge was found in the vehicle. Police determined that the vehicle was owned by Kim Tucker, who upon being contacted, gave consent to search. While at Ms. Tucker's residence , the police realized that defendant Boyland, who was at the residence at the time, matched the physical description of one of the assailants given by the Mann family, including that he was wearing the Memphis sweatshirt. The defendants were later identified by victim Edward from photo spread identifications. Mr. Clarence identified defendant Boyland but was unable to identify defendant Brewer in a photospread. While speaking with police, after being *Mirandized*, defendant Boyland indicated that he knew defendant Brewer and that he and defendant Brewer had been in the Explorer.

Based upon these actions, the defendants were indicted by a Shelby County grand jury with: (1) one count of especially aggravated kidnapping against victim Edward; (2) one count of aggravated robbery against victim Edward; (3) one count of aggravated burglary against victim Peggy; (4) three counts of aggravated assault against victims Peggy, Yanike, and Edward; and (5) one count of employment of a firearm during the commission of a dangerous felony. Trial was held August 6 - August 10, 2012. Victim Edward and Mr. Clarence testified to the above events which occurred on the evening of the home invasion robbery. The State also called victims Peggy and Yanike to testify. Each gave their accounts

---

[5]The defendants were also originally indicted for a count of aggravated assault against Clarence Mann, but the charge was dismissed prior to trial due to an error.

of the events, which generally concurred with the testimony of victim Edward, from their respective viewpoints. Memphis Police Officers were also called to testify as to their investigation of the case.

The only defense proof presented at trial was the testimony of Kimberly Tucker, defendant Boyland's aunt and registered owner of the red Ford Explorer used in the crime. She testified that defendant Boyland regularly stayed at her home because it was closer to work. She stated that he kept his work identification badge and a number of personal items inside the vehicle. She also related that she reported the Ford Explorer stolen on November 11, 2010, but could not recall how long after the truck was taken that she called police.

Ms. Tucker related that she learned from the police later that evening that her truck had been found and had been used in a robbery. She testified that she had seen some men "peeping" into her truck the day before and that defendant Boyland had gone out and spoken with them. She stated that she did not witness the actual taking of her vehicle.

As rebuttal proof, the State called a witness to establish the approximate one-hour gap that existed between the time the crime occurred and the time Ms. Tucker reported her vehicle stolen. No other proof was presented.

The case was submitted to the jury. Defendant Boyland was found guilty of one count of especially aggravated kidnapping, one count of aggravated robbery, one count of aggravated burglary, one count of employing a firearm during the commission of an aggravated burglary, and three counts of facilitation of aggravated assault. Following a sentencing hearing, defendant Boyland was sentenced to: (1) forty years at 100% for especially aggravated kidnapping; (2) twenty years at 100% for aggravated robbery; (3) ten years at 35% for aggravated burglary; (4) ten years, with six years served at 100% and the balance at 35%, for employing a firearm during the commission of a dangerous felony; (5) six years at 35% for facilitating the assault of victims Peggy and Yanike; and 6) eight years at 35% for facilitating the aggravated assault of victim Edward. After application of consecutive sentencing, he was sentenced to an effective sentence of forty-eight years in the Department of Correction. Additionally, the sentence was ordered to run consecutively to the sentences in four separate cases.

Defendant Brewer was convicted of one count of especially aggravated kidnapping, one count of aggravated robbery, one count of aggravated burglary, one count of employing a firearm during the commission of an aggravated burglary, and three counts of aggravated assault. He was sentenced to: (1) forty years at 100% for the especially aggravated kidnapping; (2) twenty years at 100% for the aggravated robbery; (3) ten years at 35% for the aggravated burglary; (4) ten years at 35% for the employment of a firearm during the

commission of a dangerous offense; (5) two six-year terms at 35% for aggravated assault; and (6) eight years at 35% for the aggravated assault of victim Edward. After applying partial consecutive sentencing, defendant Brewer was sentenced to an effective sentence of forty-eight years in the Department of Correction.

On October 1, 2012, the trial court conducted a hearing on the defendants' motions for new trial/judgment of acquittal and entered an order denying said motions in all aspects but one. The trial court appears to have granted the motion for judgment of acquittal with regard to the kidnapping convictions. However, reference is made to acting as the thirteenth juror and granting the motion for new trial with regard to the kidnapping convictions. The court based this upon its finding that the verdict was against the weight of the evidence. However, on October 12, 2012, the trial court entered the following order:

> On October 1, 2012 the Court heard the Motion for Judgment of Acquittal and/or Motion for New Trial in [this] cause. It was the intent of this Court to acquit the defendants of Especially Aggravated Kidnapping in Count 1 of the indictment in a manner that would allow the State to appeal. The Court erroneously ruled under Rule 33(d) Rules of Procedure that the defendant should be given a new trial on the charges. However, upon further reflection the Court has determined that the proper ruling should be under Rule 29(e) Rules of [Procedure] that the Motion for Judgment of Acquittal should be granted as to both defendants as to the Count One charge of Especially Aggravated Kidnapping.

A judgment sheet was entered as to Count 1 for both defendants finding them not guilty and noting that the motion for judgment of acquittal was granted with regard to Count 1 only.

Thereafter, the defendants each filed timely notice of appeal. The case is properly before this court.

**Analysis**

In this consolidated appeal, the defendants have raised multiple issues. First, the defendants assert a challenge to the sufficiency of the evidence. Defendant Brewer challenges only the conviction for the aggravated assault of victim Yanike. Defendant Boyland challenges the aggravated assault convictions for victims Peggy and Yanike, as well as the employment of a firearm during the commission of a dangerous felony. Second, they contend that their convictions for employing a firearm during the commission of a dangerous felony, Counts 5 and 6 respectively, are void and should be vacated because those counts of the indictment failed to allege a predicate felony, and two possible predicate felonies precede

26

Counts 5 and 6. Alternatively, they contend that if Count 5 and 6 are valid, the convictions should be reversed because the trial court committed plain error by improperly instructing the jury on the definition of employment of a firearm during the commission of a dangerous felony and by submitting verdict forms that authorized a conviction for that crime under a theory of criminal responsibility. As their fourth issue, the defendants contend that the trial court committed reversible error when it allowed Mr. Clarence to testify pursuant to Rule 404(b) that defendant Boyland committed an aggravated robbery against him when the defendants were not indicted for committing an aggravated robbery against him, no material issue existed to make the testimony admissible, and the trial court found that the probative value of the evidence was outweighed by the danger of unfair prejudice. Next, the defendants contend that the trial court erroneously refused to merge their convictions for aggravated robbery with the facilitation of aggravated assault conviction for defendant Boyland and the aggravated assault conviction for defendant Brewer. The defendants' argument for merger is based upon double jeopardy protections. As their sixth issue, the defendants assert that if merger does not apply, then the trial court committed reversible error by failing to compel an election as to the aggravated assault of victim Edward when the proof established at least two separate assaults against him. Finally, the defendants argue that the trial court erred when it allowed Mr. Clarence to testify, despite the fact that his name was not endorsed on the indictment, when the record reflects that the State acted in bad faith and made no good faith effort to comply with its statutory directive to endorse the names of its witnesses on the indictment.

Additionally, the State raises an issue for review. The State contends that the trial court erred in dismissing the defendants' convictions for especially aggravated kidnapping. We review each of the raised issues in turn.

### D. Sufficiency of the Evidence

Defendant Brewer contends that the evidence presented was not sufficient to support the conviction for the aggravated assault of victim Yanike. Defendant Boyland challenges the sufficiency of the evidence with regard to his convictions for the facilitation of aggravated assault against victims Peggy and Yanike, as well as the conviction for employment of a firearm during the commission of a dangerous felony.

As previously noted, "[w]hen the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dorantes*, 331 S.W.3d at 379; *Jackson v. Virginia*, 443 U.S. at 319. "[O]n appeal, the State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *Dorantes*, 331 S.W.3d at 379

27

(internal quotation omitted). It is the trier of fact who resolves all questions of witness credibility, the weight and value of the evidence, as well as all factual issues raised by the evidence. *Pappas*, 754 S.W.2d at 623. Reviewing courts should neither re-weigh the evidence nor substitute their own inferences for those drawn by the jury. *Evans*, 108 S.W.3d at 236.

The trial court's approval of the jury's verdict accredits the State's witnesses and resolves all conflicts in the evidence in the State's favor. *Moats*, 906 S.W.2d at 433-34. "Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction." *Thacker*, 164 S.W.3d at 221. These rules apply whether the verdict is predicated upon direct evidence, circumstantial evidence, or a combination of both. *Dorantes*, 331 S.W.3d at 379. In weighing the sufficiency of the evidence, circumstantial and direct evidence are treated the same, and the State is not required to exclude every reasonable hypothesis other than that of guilt. *Id*. at 381.

### 1. Defendant Brewer- Aggravated Assault

As applicable here, aggravated assault occurs when a person intentionally or knowingly causes another to reasonably fear imminent bodily injury by using or displaying a deadly weapon. T.C.A. § 39-13-101, -102. Defendant Brewer specifically contends that the proof presented was insufficient to establish beyond a reasonable doubt that victim Yanike "reasonably fear[ed] imminent bodily injury." He based his argument upon the fact that victim Yanike never testified that he experienced fear and that he had drawn a sword and was looking for a vulnerable spot on the gunman. The defendant also cites to the fact that victim Yanike retreated back into his room and was planning to run away.

Our review of the record, viewing the evidence in the light most favorable to the State, supports that conviction against defendant Brewer. The evidence established that a gun was pointed at victim Yanike during this encounter. He did procure a sword initially and attempted to stop the defendant. However, he later retreated into his bedroom and called 911 before starting to crawl out his bedroom window.

As pointed out by the State, the fact that victim Yanike never testified that he was in fear is not of great importance. This court has held that "[t]he apprehension of imminent bodily harm may be inferred from the conduct of the victim." *State v. Gregory Whitfield*, No. 02C01-9706-CR-00226, 1998 Tenn. Crim. App. LEXIS 529, *5 (Tenn. Crim. App. May 8, 1998). This remains true even when the victim affirmatively testified that he was not afraid. *State v. Carletha Jefferson*, No. W2012-00616-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 654, *9-10 (Tenn. Crim. App. Aug. 1, 2013).

We conclude that a reasonable jury could have concluded that victim Yanike was in fear of imminent bodily harm. The fact that, at some point during the encounter, he procured a weapon to protect himself or others does not preclude a reasonable person finding him to be in fear. He was attempting to aid his family. That conclusion is further bolstered by the fact that he did in fact retreat to his bedroom and attempted to escape out of a second story window. Defendant Brewer has failed to establish that his issue has merit.

### 2. Defendant Boyland

#### a. Facilitation of Aggravated Assault

Defendant Boyland challenges his two convictions for facilitation of aggravated assault against victims Yanike and Peggy. He bases his insufficiency argument on the fact that the proof showed that he did not have knowledge that these two victims were even present during the crime and that he had no way to know that they would be victims of an aggravated assault.

A person is guilty of the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under Tennessee Code Annotated section 39-11402(2), the person knowingly furnishes substantial assistance in the commission of the felony. T.C.A. § 39-11-403(a). Thus, as pointed out by Defendant Boyland, there are three specific elements embodied within this statute: (1) the defendant knew that another person intended to commit a specific felony; (2) the defendant furnished substantial assistance to that person in the commission of the felony; and (3) the defendant furnished such assistance knowingly. He argues that the State failed to present sufficient proof that defendant Boyland knew that defendant Brewer intended to commit an aggravated assault against victims Peggy or Yanike or that he knowingly furnished substantial assistance to those aggravated assaults.

Defendant Boyland acknowledges that the record could support convictions for the offenses as originally charged if he had been convicted under a theory of criminal responsibility, *i.e.* robbery. He argues, however, that "it is of no event" that these offenses could have theoretically been sustained, citing to our supreme court's decision in *State v. Parker*. In that case, the court held that "a defendant may challenge the sufficiency of the evidence where he or she is convicted of a lesser-included offense charged to the jury, whether or not the proof is sufficient to support the primary evidence. To sustain a conviction of a lesser-included offense, the proof must be sufficient to support each and every element of the conviction offense." *State v. Parker*, 350 S.W.3d 883, 909 (Tenn. 2011).

While we do agree with defendant Boyland's recitation of relevant law, we are unable to reach the same conclusion that he does. Our review of the record, viewed in the light most favorable to the State, shows that the two men worked as a team to commit the acts against the victims and complete the robbery. They approached the home together and upon entrance immediately separated, with defendant Brewer going upstairs with victim Edward and being involved in the later confrontations with victims Yanike and Peggy. At the same time, defendant Boyland was involved in a confrontation with Mr. Clarence in the lower level of the home.

We cannot conclude that the fact that defendant Boyland did not know the exact number of people in the home or their exact identities leads us to conclusion that the evidence is insufficient to support these convictions for facilitation of aggravated assault. It appears clear from the record that a reasonable juror could have drawn an inference based upon the evidence and concluded that defendant Boyland knew that defendant Brewer was armed with a gun and that he intended to employ that gun against any individuals he encountered in the upstairs of the home. It was reasonable to assume that he would employ the weapon to cause anyone whom he encountered to reasonably fear imminent bodily harm in order that the defendants be able to accomplish the home invasion. Defendant Boyland was aware that defendant Brewer would take the actions necessary to complete the task and aided him in their joint mission by securing Mr. Clarence downstairs. We conclude that the record establishes that defendant Boyland knew that defendant Brewer intended to commit specific felonies against whomever was encountered in the home, and we further conclude that defendant Boyland provided substantial assistance to defendant Brewer. No relief is warranted.

### b. Employing a Firearm During the Commission of a Dangerous Felony

Defendant Boyland presents for review another challenge to the validity of this conviction, which we have also concluded must be reversed upon other grounds. Nonetheless, in the interest of completeness, we will briefly review the issue.

Defendant Boyland claims that the evidence presented cannot support the conviction. It is an offense to employ a firearm during the commission of a dangerous felony. T.C.A. § 39-17-1324(b)(1). Aggravated burglary is a dangerous felony. T.C.A. § 39-17-1324(i)(1)(H). As relevant here, aggravated burglary is the entering of a home with the intent to commit a felony. T.C.A. § 39-14-401, -401, -403.

In the light most favorable to the State, the proof establishes that each of the defendants, armed with a gun, forced their way into the victims' home with the intent of robbing them at gunpoint. However, what is not clear from the proof presented is when

defendant Boyland showed himself to be armed. Victim Edward was standing inside the doorway when he first saw the suspects, and he was struck in the head by defendant Brewer. He did testify that he saw defendant Boyland with a gun, but he did not state whether defendant Boyland was inside or outside the house when he saw the gun. Mr. Clarence testified that he saw defendant Boyland after he entered and that he did not immediately see him in possession of a gun upon his entry.

Defendant Boyland argues that this proof establishes only that he employed a firearm after the crime of aggravated burglary was completed, *i.e.* upon entry into the habitation. The State agrees with the defendant in his point that the aggravated burglary was complete upon entry. *See State v. Ralph*, 6 S.W.3d 251, 255 (Tenn. 1999). The State further appears to concede that the proof "in the most technical sense," does not establish that defendant Boyland employed a firearm to gain access to the victims' home. They liken defendant Boyland's actions to that of being a "distracter" so that the "strongman," defendant Brewer, could force his way into the home. However, the issue of criminal responsibility remains.

Relying upon *State v. Barnes*, 954 S.W.2d 760 (Tenn. Crim. App. 1997), defendant Boyland asserts that this court should consider only the conduct of defendant Boyland, not his criminal responsibility for the actions of defendant Brewer, when assessing the sufficiency of the evidence. In *Barnes*, the indictment failed to inform the accused whether she was being prosecuted for her own conduct or for being criminally responsible for the conduct of a co-defendant with regard to the charge of aggravated assault. *Id*. at 763. The court noted that the proof suggested "two separate offenses committed by two separate criminal actors" because the defendant bit the victim's arm and the co-defendant struck the victim in the head. *Id*. at 764. The court concluded that "charging one count of aggravated assault did not provide adequate notice of which assault the appellant was being called to defend against" and limited sufficiency review to the proof of the defendant's own conduct. *Id*. at 765.

Defendant Boyland asserts that *Barnes* controls his case because the proof in this case suggested two separate offenses committed by two separate criminal actors. He points out that both defendants were armed, and each was individually charged in separate counts of the indictment, while being jointly charged with every other offense. He contends that, on that fact alone, the indictment announces criminal responsibility is not applicable to those counts.

As the State points out, defendant Boyland's entire arguments rests upon the assumption that he cannot be held criminally responsible for the conduct of defendant Brewer because of what he argues to be a defective indictment. However, we have already addressed the issue above and concluded his assumption is incorrect because the indictment carried all

31

of the nuances of each of the offenses, including criminal responsibility. *See Lemacks*, 996 S.W.2d at 173.

Moreover, defendant Boyland's reliance upon *Barnes* is also misplaced. As noted by the State, the *Barnes* case predates *Hill*, which emphasized the relaxation of strict common law pleading requirements. *Hill*, 954 S.W.2d at 729. Additionally, the cases are factually distinguishable. In *Barnes*, the indictment charged each defendant with aggravated assault, with both defendants charged in a single count. *Barnes*, 954 S.W.2d at 763-64. However, the proof established two separate offenses committed by each of the two defendants. *Id*. at 764. Thus, by only charging one count of aggravated assault in a single count, the defendants were not informed of which assault they were being called to defend against.

However, in the instant case, the proof establishes a single burglary committed by two separate actors. Because only defendant Brewer used the gun to gain entry into the home, clearly, defendant Boyland would have been on notice that he would be called to answer the charge pursuant to a theory of criminal responsibility. As such, the conduct of defendant Brewer is relevant to our sufficiency review. Pursuant to that standard, there is no question that the proof presented, in the light most favorable to the State, is sufficient to support the conviction. The issue is without merit.

**B. Predicate Felony Alleged in the Indictment**

The defendants contend that their convictions for employing a firearm during the commission of a dangerous felony is void and should be vacated because, as it was charged in the indictment, no predicate felony was specified and two possible felonies preceded this count. As an initial matter, the defendants contend that the issue is properly before this court despite the fact that it was not challenged in the trial court. This court has held that where an indictment fails to charge an offense, waiver for failure to raise the issue prior to trial does not apply. *State v. Perkinson*, 867 S.W.2d 1, 5-6 (Tenn. Crim. App. 1992); *State v. Keel*, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994) ("The waiver provision of Rule 3(e), however, does not apply when the issue, if found to be meritorious, would result in the dismissal of the prosecution of the accused.").

Moreover, this court must determine "whether the trial and appellate court have jurisdiction over the subject matter[.]" *Perkinson*, 867 S.W.2d at 6 (citing Tenn. R. App. P. 13(b)). An indictment that does not charge an offense deprives the courts of subject matter jurisdiction. *State v. Lindsey*, 208 S.W.3d 432, 438 (Tenn. Crim. App. 2006) ("the rationale is that if the indictment fails to include an essential element of the offense, no crime is charged, and, therefore, no offense is before the court."). An allegation that an indictment does not charge an offense is, therefore, subject to plenary review even if not raised in the

trial court.  As such, we review the defendants' issue.

The United States Constitution and the Tennessee Constitution state that a defendant is entitled to knowledge of "the nature and cause of the accusation." U.S. Const. Amend. VI; Tennessee Const. art I, § 9.  As a general rule, an indictment is valid if it provides sufficient information: (1) to enable the accused to know the accusation to which answer is required; (2) to furnish the court adequate basis for the entry of a proper judgment; and (3) to protect the accused from double jeopardy.  *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991); *VanArsdall v. State*, 919 S.W.2d 626, 630 (Tenn. Crim. App. 1995).  Tennessee Code Annotated § 40-30-202 provides:

> The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to engage a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment.

"[T]he touchstone for constitutionality is adequate notice to the accused." *State v. Hill*, 954 S.W.2d 725, 729 (Tenn. 1997).  At common law, pleading requirements for indictments were strict because the elements of criminal offenses were not easily ascertainable by reference to a statute. *Id*. at 728.  In many decisions since *Hill* discussing the sufficiency of indictments, the Tennessee Supreme Court has repeatedly emphasized the relaxation of strict common law pleading requirements. *State v. Hammonds*, 30 S.W.3d 294, 299 (Tenn. 2000).  Tennessee courts approach "attacks upon indictments . . . from the broad and enlightened standpoint of common sense and right reason rather than from the narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding." *Hill*, 954 S.W.2d at 728 (internal citation omitted).  Challenges to the legal sufficiency of an indictment present questions of law subject to de novo review on appeal. *State v. Wilson*, 31 S.W.3d 189, 191 (Tenn. 2000).

As charged in this case, "[i]t is an offense to employ a firearm during the . . . [c]ommission of a dangerous felony."  T.C.A. § 39-17-1324(b)(1).  The legislature has provided a statutory list of predicate dangerous felonies, which includes both especially aggravated kidnapping and aggravated burglary.  T.C.A. § 39-17-1324(i)(1)(E), (H).

In Count 5 and Count 6 of the indictment, the defendants are individually charged with employing a firearm during the commission of a dangerous felony.  In Count 1 of the indictment, the defendants were jointly indicted for especially aggravated kidnapping and in Count 4, the defendants were charged with aggravated burglary.  The defendant asserts that Counts 5 and 6 are unlawful because they fail to identify the predicate felony used to

prosecute the firearms offense, whether it be the aggravated kidnapping or the aggravated burglary.

In support of the argument, the defendants directs this court's attention to five fairly recent cases decided by this court. First, in *State v. Christopher Ivory Williams*, this court held that the failure to allege a predicate felony in a felony murder count "failed to provide [the defendant] with notice of the underlying offenses and its mens rea, which resulted in an invalid indictment and precluded a lawful felony murder conviction." No. W2009-01638-CCA-R3-CD, 2011 Tenn. Crim. App. LEXIS 329, *29 (Tenn. Crim. App., May 9, 2011), *perm. app. denied* (Tenn. Aug. 24, 2011). In *State v. Michael L. Powell and Randall S. Horne*, the court noted that the State's failure to allege a predicate felony in an indictment for a violation of Tennessee Code Annotated section 39-17-1324 "presented a close question," but declined to address the issue due to other problems with the conviction. No. E2011-00155-CCA-R3-CD, 2012 Tenn. Crim. App. LEXIS 292, *39 (Tenn. Crim. App, May 10, 2012).

In *State v. Demeko Gerard Duckworth*, the court again considered a multi-count indictment that included one count of attempted first degree murder and one count of employing a firearm during the commission of a dangerous felony which failed to identify the predicate felony. No. M2012-01234-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 398, *54-55 (Tenn. Crim. App. Feb. 27, 2013). The court noted that "[g]enerally, an indictment for a violation of Code section 39-17-1324 that does not name the underlying dangerous felony does not provide the defendant with adequate notice of the crime charged." *Id*. at *58. The court concluded, however, that because the indictment in the case charged only one possible dangerous felony, it was "'reasonably clear' that the charge of employing a firearm during the commission of a dangerous felony [was] connected to" that charge. *Id*. at *60. As such, the court concluded that the indictment was not void for lack of notice.

Next, in *State v. Larry Jereller Alston, et al.*, this court invalidated a count of the indictment that charged a violation of Tennessee Code Annotated section 39-17-1324 as failing to allege a predicate felony when the indictment also included counts for especially aggravated kidnapping and aggravated burglary. No. E2012-00431-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 460, *41 (Tenn. Crim. App. May 30, 2013). The four-count indictment in the case charged especially aggravated kidnapping, aggravated robbery, aggravated burglary, and possession of a firearm with intent to go armed. *Id*. The first three counts appeared on the first page of the indictment, while the firearm offenses appeared by itself on the second page. *Id*. The court noted that either the especially aggravated kidnapping or the aggravated burglary could serve as the predicate felony for the firearm offense and concluded that "[u]nder these circumstances, the separate counts of the indictment cannot be read together to save the fatally defection omission in count four."

34

Finally, in *State v. Chad Medford*, the court again considered an indictment which charged aggravated burglary, especially aggravated kidnapping, a violation of section 39-17-1324 which did not specify a predicate felony, and multiple other charges. *State v. Chad Medford*, No. E2012-00335-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 475, *45 (Tenn. Crim. App. Jun. 5, 2013). The first page of the ten-count, four-page indictment included two counts of aggravated burglary as to each victim and the firearms offense only. *Id*. at *52. This court concluded that it was "reasonably clear" that the firearms offense was connected to the counts of aggravated burglary which preceded it and held that the indictment was not void for lack of notice. *Id*.

Again, in this case, the defendants were charged individually in counts five and six of the indictment with employing a firearm during the commission of a dangerous felony. In counts one and four, they were jointly charged with especially aggravated kidnapping and aggravated burglary, both included on the statutory list of predicate felonies. Based upon the above caselaw, we would have to conclude that the defendants are correct and that the firearms counts of the indictment is void for lack of notice. Both of the possible charged predicate felonies precede the firearms offense, and there is simply no way to distinguish which charge the State was relying upon as the designated predicate felony.

The State acknowledges the above relied upon caselaw, but respectfully disagrees with the holdings. The State does not appear to disagree that this caselaw stands for the proposition that if multiple possible predicate felonies are presented with a section 39-17-1324 offense, the indictment must make reasonably clear to a defendant which predicate felony is being asserted. The State advances multiple reasons why it believes that the caselaw is incorrect, the first being that it represents a return toward strict common law pleading requirements, which the Supreme Court has disavowed. We disagree that the requirement of making reasonably clear what predicate felony the State will be relying on is an onerous burden.

The State also contends that the failure to specify the predicate felony does not deprive the defendant of "adequate notice" to be able to prepare a defense. The State argues that if a defendant is charged with multiple possible statutory predicate felonies, he has adequate notice to prepare a defense because the defendant, although unaware which predicate felony will be charged to the jury, he knows that it will be one of them. The State maintains that the defendant could prepare a defense for each. As pointed out by the defendants, this argument acknowledges that the defendant is unaware of which crime the grand jury charged him of committing. A defendant is constitutionally entitled to notice of what crime he is charged with committing. Whether it is "unlikely that the defendants would have taken a different approach to their defense" had they known the predicate felony in this case was the aggravated burglary as opposed to the especially aggravated kidnapping is not

the issue at hand. The issue remains whether the State set forth an indictment that made "reasonably clear" to the defendant the crime for which they were charged. In this case, the State did not.

The State attempts to analogize this issue to situations in which defendants are required to prepare multiple defenses where they are indicted for a single offense, but the jury is permitted to consider multiple criminal acts of the type which, if found beyond a reasonable doubt, would each support a conviction of the charged offense, *i.e.*, election of offenses. The State also compares the issue to when a defendant must answer multiple counts charging alternative theories of guilt for the same crime or when the State does not allege the theory by which it intends to prove the crime. We agree specific notice is not required in these instances. The State contends that "[i]t does not make sense that the law would deem notice effective in such situations, which require defendants to prepare multiple defenses, but then demand strict notice of a predicate offense in employment of firearm cases on the basis that defendants cannot be required to prepare defense to multiple theories of guilt."

However, we cannot accept the analogy. The holding of our court is not based upon the fact that the defendant might have to prepare multiple defenses. As pointed out by the defendant, all these situations noted by the State involve a properly charged crime before the court. That is not the case here. When an indictment fails to fully state the crime, all subsequent proceedings are void. *Perkinson*, 867 S.W.2d at 5 (citing *State v. Morgan*, 598 S.W.2d 796, 797 (Tenn. Crim. App.1979)).

As a final argument to sustain the conviction, the State asserts that the indictment in this cases contains only one possible predicate felony, that being aggravated burglary. This argument is based upon *Anthony D. Byers v. State,* in which an especially aggravated charge was disqualified from serving as the predicate felony offense in the case because the deadly weapon used was specifically a firearm. No. W2011-00473-CCA-R3-PC, 2012 Tenn. Crim. App. LEXIS 172, *21-25 (Tenn. Crim. App. Mar. 15, 2012), *perm. app. denied* (Tenn. Aug. 15, 2012) (declaring a conviction for a violation of Tenn. Code Ann. § 39-17-1324 void under Tenn. Code Ann. § 39-17-1324(c) where the proof established that the deadly weapon in question was a firearm, even though the indictment referred more broadly to a deadly weapon).

Relying upon that holding, the State argues that the defendants in this case, which involved a firearm, would have had notice that if the predicate felony was especially aggravated kidnapping, and that if they were convicted, the conviction could not be sustained. The State also urges that the defendant would have likewise had notice that if the especially aggravated kidnapping's deadly weapon turned out not to be a gun, the especially

aggravated kidnapping would have fallen outside the purview of Tennessee Code Annotated section 39-17-1324, employing a firearm. Thus, the State claims that the defendant had notice that there was no way that the especially aggravated kidnapping could be the predicate felony for employment of a firearm during commission of a dangerous felony in this case.

The State's argument does not address the fact that *Byers* preceded this court's holding in *Alston* by almost one year. Again, in *Alston*, this court invalidated the indictment. While we agree with the State that we are not bound by these unreported cases, we nonetheless may look to them as persuasive authority. Indeed, all the cases cited by the defendants indicate that various panels of this court have held that in order for an indictment to be valid, the defendant must be made reasonably certain of the predicate felony underlying a conviction for employing a firearm during the commission of a dangerous felony. We adopt that same well-reasoned conclusion in this case.

As pointed out by the defendants, an indictment must give notice to a person of "common understanding." T.C.A. § 40-13-202. Although not necessary to our conclusion, we question whether "common understanding" would exist that especially aggravated kidnapping could not serve as a predicate felony if a firearm was utilized when the very statute setting forth the dangerous felonies denotes especially aggravated kidnapping. Additionally, the conclusion desired by the State, that a person of common understanding would recognize that only aggravated burglary was a possible predicate felony in this case, would require that person to ignore the *Alston* case completely, a decision reached after *Byers*. Moreover, we note that the indictment was never the issue in the *Byers* case. Rather, the case addressed an issue of double jeopardy concerns. Thus, a different analysis applied.

Having addressed this issue in detail, we must conclude that Count 5 and Count 6 of the indictment in this case are invalidated for failure to give notice of the proper predicate felony. As such, the convictions must be reversed.

### C. Improper Jury Instruction and Verdict Form

The defendants also challenge the conviction for employing a firearm during the commission of a dangerous felony on a second ground. They assert that the trial court committed plain error by improperly instructing the jury on the definition of the crime and by submitting verdict forms that authorized a conviction for the crime under a theory of criminal responsibility. The defendants acknowledge that the issue is being raised for the first time on appeal and is, therefore, subject only to plain error review. Because the issue is subject only to plain error review, and because we have already determined that these convictions should be reversed, we decline to engage in plain error review on the issue.

### D. Testimony of Clarence Mann

Next, the defendants contend that it was error to allow Clarence Mann to testify pursuant to Rule 404(b) that defendant Boyland committed an aggravated robbery against him when the defendant was not indicted for that crime. They argue that the court's decision to allow the testimony violated Rule 404(b) of the Rules of Evidence. The State responds that the argument is meritless because the testimony proved several other things other than conduct conforming with a character trait and that the danger of unfair prejudice did not outweigh the probative value of the evidence.

The general rule is that evidence of a defendant's prior conduct is inadmissible, especially when previous crimes or acts are of the same character as the charged offense, because such evidence is irrelevant and "invites the finder of fact to infer guilt from propensity." *State v. Hallock*, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993); *see also State v. Dotson*, 254 S.W.3d 378, 387 (Tenn. 2008). Tennessee Rule of Evidence 404(b) permits the admission of evidence of prior conduct if the evidence of other acts is relevant to a litigated issue such as identity, intent, or rebuttal of accident or mistake, and the probative value outweighs the danger of unfair prejudice. Tenn. R. Evid. 404(b), Advisory Comm'n Cmts; *see State v. Parton*, 694 S.W.2d 299, 303 (Tenn. 1985). Evidence that proves motive serves the purpose of completing the story of the crime. *Leach*, 148 S.W.2d at 47. However, "[e]vidence of other crimes, wrong, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b).

Before admitting evidence under Rule 404(b), the rule provides that: (1) upon request, the court must hold a hearing outside the jury's presence; (2) the court must determine that the evidence is probative on a material issue and must, if requested, state on the record the material issue and the reasons for admitted or excluding the evidence; (3) the court must find proof of the other crime, wrong, or act to be clear and convincing; and (4) the court must exclude the evidence if the danger of unfair prejudice outweighs its probative value. *Id*.

A trial court's decision regarding the admission of Rule 404(b) evidence will be reviewed under an abuse of discretion standard; however, "the decision of the trial court should be afforded no deference unless there has been substantial compliance with the procedural requirements of the Rule." *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997). "Reviewing courts will find an abuse of discretion only when the trial court applied incorrect legal standards, reached an illogical conclusion, based it decision on a clearly erroneous assessment of the evidence, or employed reasoning that caused an injustice to the complaining party." *Banks*, 271 S.W.3d at116.

The record established that the State inadvertently omitted count three from the

38

indictment in this case, which was to involve the charge of aggravated robbery against Mr. Clarence. A hearing was requested pursuant to Rule 404(b) prior to trial concerning whether Mr. Clarence would be allowed to testify at trial regarding any criminal acts which had been perpetrated against him. Immediately following the testimony of victim Edward, the hearing was held, and Mr. Clarence testified as follows. He stated that two men came in with victim Edward, that victim Edward went upstairs with one man, and the other man approached Mr. Clarence. That man made Mr. Clarence lie on the floor at gunpoint and proceeded to asked him for money. Mr. Clarence testified that he eventually gave the man $10 and his credit cards, after which the man asked for the pin number and if he had any drugs. Mr. Clarence later noticed that the credit cards had been left behind. During this hearing, Mr. Clarence did not make any identification of the defendants.

The State argued that the evidence presented was relevant to establish motive and intent under Rule 404(b). The State asserted that:

> It goes to his intent was that there was a robbery under criminal responsibility, not that he was just there, didn't know what this person was doing or anything else, but given that fact that he came from the side, the person who hit him and took Mr. Edward Mann upstairs, this other person there, he goes in the house, too, and to show that they're working in concert, and it is a criminal responsibility situation, we have this other individual going into the other room and making a demand for money at the same time.

> Which shows a common scheme or plan and goes to intent and criminal responsibility for the actions of the person taken upstairs because they were working in concert.

During the hearing, the State indicated that it was not seeking to admit Mr. Clarence's testimony to establish the identity of the defendants.

Following the hearing, the trial court gave the following ruling:

> Well, in light of the facts which are that, you know, this is a home invasion, and the entire family is involved, including the father and the son, and that we're talking about one common plan to rob this house and the occupants of this house, and we have testimony so far that one went downstairs to the father, one went upstairs with the son. That testimony is before the jury already.

> And to complete the story, to not put on anything with regard to what

39

happened with Clarence Mann downstairs, I do think leaves a huge void and does not complete the story.

I think this is part of a common scheme or plan and it also goes to intent because the - -if the argument is there was no intent to rob or there was - the intent obviously, based upon the testimony is to rob everybody in the household, everybody involved in the family, and based upon my view of all those issues that have been brought in, I do find under Rule 404(b) that there is a material issue that exists other than conduct conforming with a character trait.

I don't find that this is propensity evidence.

And again, its most unique. It's the most unique set of circumstances I've ever read or thought about or seen with regard to 404(b) type of evidence because but for the fact that it was indicted improperly, all this would be coming in irregardless [sic].

And so, it's not like this is something, you know, extraordinary or it's being brought in to show propensity, because it would be coming in otherwise.

And it would just be part of the regular case.

So I find that there is obviously a material issue going to the intent to rob this family, the intent to rob Mr. Edward Mann, based upon all the testimony, the actions of [defendant] Boyland and the actions of [defendant] Brewer are related through criminal responsibility and I do find that it's part of a common scheme or plan to rob Mr. Edward Mann who is the victim in the indictment counts that are going to the jury, to show that this was going on throughout the house and that these types of allegations were made against Clarence Mann - or not allegation but threats and request for money were made against Clarence Mann.

The trial court also found clear and convincing proof that these actions occurred, specifically noting that Mr. Clarence Mann did not identify the perpetrators at the hearing. The court then stated that "the probative value to the State in proving the intent of both these parties, one being upstairs and being down is outweighed by any danger of unfair prejudice." Additionally, the trial court twice admonished the jury that Mr. Mann's testimony could be considered only as proof of a common scheme or plan or proof of the defendants' intent, not as proof of disposition of the defendants to commit the crime for which they were on trial.

Initially, the defendants argue that the abuse of discretion standard does not apply in this case because the trial court failed to substantially comply with the procedures of Rule 404(b). The court admitted the evidence despite stating on the record that "the probative value to the State in proving the intent of both of these parties, one being upstairs and one being down is outweighed by any danger of unfair prejudice." The defendants point out that this is not the correct procedure or standard, a statement with which we agree. Rule 404 (b)(4) does require exclusion of evidence if the probative value is outweighed by the danger of unfair prejudice. While we do acknowledge that the trial court made the statement, a closer reading of the surrounding context leads us to conclude that the trial court simply misspoke. When considered in light of the surrounding statements and the admission of the evidence, the statement was merely a slip of the tongue. Thus, we conclude that the abuse of discretion standard does apply.

In arguments, the defendants assert three reasons that the decision to allow the testimony was an abuse of the trial court's discretion: (1) intent was not actually an issue in the case, which is made clear by the fact that defendant Boyland's entire closing argument advanced a theory of mistaken identity, making the sole issue in the case identity; (2) common scheme or plan, which the trial court repeatedly referred to in its ruling, is admissible only to establish the material issue of identity; plus the State conceded that the evidence was not offered to establish identity and Mr. Clarence did not identify the defendants at the hearing; and (3) there is no legal standard under which 404(b) is implicated to "complete the story" and avoid a chronological void. It is further contended that the error is not harmless.

After review, we do not conclude that the trial court abused its discretion in allowing the testimony of Mr. Clarence. Despite the defendants' argument to the contrary, we conclude that the testimony was relevant to show that the defendants' intent in entering the Mann home was to perpetrate felonies as part of their plan. The confinement of Mr. Clarence downstairs while the robbery occurred upstairs facilitated the home invasion by preventing Mr. Clarence from intervening to protect his family.

The State points out another basis for admission of the evidence was identity, although acknowledging that they did not rely upon that basis for admission and that the court did not explicitly rely upon the basis in its ruling. The defendants themselves even indicate that identity was at issue in the case, as the theory pursued was that the defendants were not the perpetrators of the crime. Defendant Boyland's aunt testified that her vehicle was stolen, thus implying that whomever had stolen the vehicle perpetrated the robbery of the Manns. The State, therefore, contends that even though identity was not perceived to be an issue at the 404(b) hearing, the proof at trial certainly made it an issue. The State urges this court to consider the propriety of the trial court's ruling in light of the proof at trial. *See State v.*

*Gilley*, 173 S.W.3d 1, 6 (Tenn. 2005) ("Rule 404(b) criteria - in particular, the existence of a material issue at trial and the balancing of the probative value and unfair prejudice - require consideration of the evidence presented at trial."). Mr. Clarence's testimony establishes that the defendants were at his home and were the perpetrators of the crime. We agree with the State that this testimony is "no more character evidence than is the testimony of any witness to a crime who has some interaction with the perpetrator of the crime."

The State notes that defendant Boyland acknowledges that identity was at issue in the case, but argues that intent was not. The State responds that the two are inextricably intertwined, noting that if the State wanted to prove his intent, it had to prove his identity as the perpetrator. The State points out that while Mr. Clarence did not specifically identify the defendants at the 404(b) hearing, he did provide testimony that, when combined with evidence from other witnesses at trial, may have helped establish the identity.

Again, on this record we cannot conclude that the trial court abused it discretion in allowing Mr. Clarence's testimony to be admitted at trial. Regardless, however, even if error was established, the error would be harmless. The evidence of guilt in this case was overwhelming. *See State v. Mallard*, 40 S.W.3d 473, 488-89 (Tenn. 2001) ("The more the proof exceeds that which is necessary to support a finding of guilt beyond a reasonable doubt, the less likely it becomes that an error affirmatively affected the outcome of the trial on its merits."). In this case, multiple witnesses identified the defendants. A vehicle belonging to defendant Boyland's aunt was seen in front of the victims' home, and victim Edward saw the defendants exit that vehicle prior to the incident. Defendant Boyland's identification card was also found inside the vehicle. We cannot conclude that the testimony of Mr. Clarence as to what occurred downstairs in the home affected the verdicts of the jury. No relief is warranted on this issue.

### E. Merger of Aggravated Assault of Edward Mann

Next, the defendants contend that the trial court erred by refusing to merge the conviction for aggravated robbery in Count 2 and the conviction for facilitation of aggravated assault and aggravated assault, respective to each defendant, in Count 9 in violation of their double jeopardy protections. The State concedes error. Whether multiple convictions violate double jeopardy is a mixed question of law and fact, which this court reviews de novo without any presumption of correctness. *State v. Watkins*, 362 S.W.3d 530, 539 (Tenn. 2012).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." Likewise, the Tennessee Constitution also protects against

double jeopardy convictions, providing that "no person shall, for the same offence, be twice put in jeopardy of life or limb." Tenn. Const. art. I, § 10. The clauses have been interpreted to include the following protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989); *State v. Phillips*, 924 S.W.2d 662, 664 (Tenn. 1996).

In *Watkins*, the Tennessee Supreme Court abandoned the test set forth in *State v. Denton*, 938 S.W.2d 373 (Tenn. 1996), and adopted the test set out in *Blockburger v. United States*, 284 U.S. 299 (1932), as the proper test for determining whether multiple convictions under different statutes violate double jeopardy. *Watkins*, 362 S.W.3d at 556. The Tennessee Supreme Court explained the two-step Blockburger test as follows:

> The first step of the *Blockburger* test is the threshold question of whether the convictions arise from the same act or transaction. This threshold question should be answered by reference to the charging instrument and the relevant statutory provisions. . . . If the convictions do not arise from the same act or transaction, there cannot be a violation of the double jeopardy protection against multiple punishment. Thus, a threshold determination that multiple convictions do not arise from the same act or transaction ends the inquiry and obviates the need for courts to further analyze double jeopardy claims.
>
> . . . .
>
> If the threshold is surpassed, meaning the convictions arise from the same act or transaction, the second step of the *Blockburger* test requires courts to examine the statutory elements of the offenses. If the elements of the offenses are the same, or one offense is a lesser included of the other, then we will presume that multiple convictions violate double jeopardy. However, if each offense includes an element that the other does not, the statutes do not define the "same offense" for double jeopardy purposes, and we will presume that the Legislature intended to permit multiple punishments.

*Watkins*, 362 S.W.3d at 557.

Count 2 of the indictment charged the defendants with committing aggravated robbery "by violence or by putting EDWARD MANN in fear, said taking accomplished with a deadly weapon or by display of an article used or fashioned to lead EDWARD MANN to reasonably believe the article to be a deadly weapon[.]" Count 9 of the indictment charged the

43

defendants with aggravated assault stating, that they "did unlawfully and knowingly commit an assault on EDWARD MANN and use or display a deadly weapon and cause the said EDWARD MANN to reasonably fear imminent bodily injury[.]" Defendant Brewer was convicted of both offenses as charged. Defendant Boyland was convicted of aggravated robbery as charged and the lesser included offense of facilitation of aggravated assault.

A review of the charging instruments in this case reveal that counts two and nine both involved one victim and occurred on the same day. Moreover, the General Assembly has expressed no intent to preclude or to allow dual convictions for aggravated assault and aggravated robbery. Thus, we must conclude that the aggravated robbery, aggravated assault, and facilitation of aggravated assault all arose from the same act or transaction. The threshold test having been met, we proceed to the second prong of the *Blockburger* analysis.

As charged in the indictment, aggravated assault is a lesser included offense of aggravated robbery, as has previously been held. *State v. Swift*, 308 S.W.3d 827, 832 n.6 (Tenn. 2010); *State v. Franklin*, 130 S.W.3d 789, 798 (Tenn. Crim. App. 2003). Moreover, facilitation of aggravated assault is a lesser included offense to both aggravated robbery and aggravated assault. T.C.A. § 40-18-110(f)(2). As such, we must conclude that the defendants are correct in their assertion that merger was appropriate. Thus, we must remand the case back to the trial court for merger of the aggravated assault and facilitation of aggravated assault convictions to be merged into the aggravated robbery with respect to each defendant. Corrected judgments of conviction reflecting said change should be entered.

### F. Election on Aggravated Assault of Edward Mann in Count 9

The defendants have asserted an alternative challenge to the aggravated assault and facilitation of aggravated assault convictions they received pursuant to Count 9 of the indictment. They assert that the court should have forced the State to make an election when the defendants were charged with a single aggravated assault but the State presented proof of two separate aggravated assaults of victim Mann. Review of this issue is no longer necessary, as we have previously concluded that Count 9 merge with Count 2. Nonetheless, we will briefly address the issue.

It appears that the defendants failed to file a motion to compel an election in this case. However, the duty to ensure unanimity exists on the part of the trial court even in the absence of a specific request by the defendant. *McCary*, 119 S.W.3d at 241 (citations omitted). As previously noted, when the State presents proof of multiple instances of conduct that match allegations contained in a charging instrument, the State must "elect the distinct offense about which the jury is to deliberate in returning its verdict as to each specific count." *Adams*, 24 S.W.3d at 294. Nonetheless, any error involving election requires automatic

reversal unless the State demonstrates that the error was harmless beyond a reasonable doubt. *Shelton*, 851 S.W.2d at 138. However, this court has repeatedly held that a trial court's error in not instructing the jury about the State's election of offenses may be harmless "where the prosecutor provides during closing argument an effective substitute for the missing instruction." *Adrian Keith Washington*, No. M2008-01870-CCA-R3-CD, *15.

As we did in the first case, we conclude that election should have occurred in this case. The evidence presented established two assaults against victim Edward. He was accosted near the front door of his home and was held at gunpoint and threatened while upstairs. As we have noted, "if the defendant's actions resulted in two assaults, the trial court should have addressed the issue by requiring an election and/or by imparting an enhanced unanimity instruction to the jury[.]" *Larry Darnell Pinex v. State*, 2010 Tenn. Crim. App. LEXIS 203, *9.

However, we are unable to accept the defendants argument that the error was not harmless beyond a reasonable doubt. The State, in closing arguments, specifically argued that the aggravated assault of victim Edward was established by the pointing of a gun at him to get him to hand over his money. As the State noted when discussing this count, the State did not discuss the hit to the head which occurred at the beginning of the home invasion. Thus, any error was cured in closing argument, and the defendants are not entitled to relief on this issue. *State v. Adrian Keith Washinton*, 2010 Tenn. Crim. App. LEXIS 169, *15.

**G. Allowing Clarence Mann to Testify Despite not being Endorsed on the Indictment**

The last issue raised by the defendants again challenges allowing Mr. Clarence to testify at trial. The defendants contend that it was error to allow Mr. Clarence to testify because his name was not endorsed on the indictment. They contend that the record reflects that the State acted in bad faith and made no good faith effort to comply with the statutory directive to endorse the names of all witnesses on the indictment. The State replies that the argument is not meritorious because the record shows that the defendants were actually aware that Mr. Clarence would be a witness. Again, we must note that defendant Brewer failed to object to this testimony at trial or to include the issue in his motion for new trial, so plain error review applies.

Tennessee Code Annotated section 40-17-106 directs the district attorney general to endorse each indictment with the names of the witnesses the State intends to summon in the matter. "The purpose of this statute is to prevent surprise to the defendant at trial and to permit the defendant to prepare his or her defense to the State's proof." *State v. Kendricks*, 947 S.W.2d 875, 883 (Tenn. Crim. App. 1996). However, the statute is directory in nature,

not mandatory. *Id*. (citing *State v. Harris*, 839 S.W.2d 54, 69 (Tenn. 1992)). Thus, a witness is not automatically disqualified from testifying if the State did not include her name on the indictment. *Id*. To obtain relief, a defendant "must demonstrate prejudice, bad faith, or undue advantage," but the decision of whether to allow a witness to testify is left to the sound discretion of the trial judge. *Id*. "'In this context, it is not the prejudice which resulted from the witness' testimony but the prejudice which resulted from the defendant's lack of notice which is relevant to establish prejudice.'" *Id*. (quoting *State v. Jesse Eugene Harris*, No. 88-188-III, 1989 Tenn. Crim. App. LEXIS 449 (Tenn. Crim. App. June 7, 1989)).

There is no dispute that Mr. Clarence's name is not included on the indictment in this case. However, the record establishes and the defendants acknowledge that they were aware that Mr. Clarence would be testifying at trial. It appears that the information that Mr. Clarence would be testifying was provided to the defendants in discovery. The trial court, in addressing this issue, stated: "Whether he's listed on the indictment or not, it's not significant, as long as you've been made aware that he's going to be a witness."

The defendants argue that the trial court based its ruling exclusively on the fact that Mr. Clarence was a known witness. They contend that the trial court applied an incorrect legal standard because exclusion is also required upon a showing of bad faith or undue advantage. They assert that the record establishes that the State did in fact demonstrate bad faith because it persistently refused to make any good-faith effort to comply with the statutory directive. In an effort to establish this bad faith, the defendants point to: (1) a pleading filed by the State indicating that its witnesses were endorsed on the indictment; (2) a statement in open court that it would not be furnishing defense counsel with a witness list; and (3) a statement made by the State which failed to identify who the final witnesses in the case would be. The defendants argue that, because the record demonstrates bad faith, the trial court's decision to allow Mr. Clarence to testify was an abuse of discretion. We disagree.

We do agree with the defendants that if the State had acted in bad faith in omitting a witnesses name from the indictment purposefully, it could be grounds for exclusion. However, the defendants have failed on this record to establish any bad faith on the part of the State with regard to omission of the name from the indictment. The proof relied upon by the defendants simply does not establish bad faith on the lack of endorsement, as most of the evidence does not even relate to endorsements on the indictment. We cannot conclude that it was bad faith to omit a name from an indictment when the name was timely disclosed in discovery. The record does not establish that the State was in any way attempting to prevent the defense from knowing that Mr. Clarence would testify. Moreover, the defendants were aware that the State had intended to charge them with separate offense as to Mr. Clarence. There is simply no proof that the State did not list Mr. Clarence's name on the indictment in

46

bad faith or to obtain an undue advantage.

We further note that there was clearly no prejudice resulting from the omission in this case. The defendants were timely made aware of the situation. They have failed to show how having Mr. Clarence listed on the indictment would have changed anything about their preparation or how this case proceeded. The defendants were not taken by surprise when he was called. Indeed, this whole issue was raised in pretrial proceedings. The defendants are entitled to no relief.

## III. State Appeal- Case No. 11-02361

The State also raised an issue on appeal in this case. The State argues that the trial court erroneously granted judgments of acquittal as to the especially aggravated kidnapping of victim Edward in Count 1. As mentioned earlier, the defendants were convicted of especially aggravated kidnapping after the jury was properly instructed pursuant to *White.*

At the close of the State's proof, the defendants made a motion for judgment of acquittal. The court denied the motion in all regards except to the especially aggravated kidnapping charges, noting that it did "have a concern about the kidnapping." At that point, the court reserved the issue for a later ruling. After reviewing the *White* case, the trial court stated on the record:

> And this is the very type of case that causes me personal concern, what is substantial interference.
>
> And is it a part of the aggravated robbery.
>
> It becomes as it states in [*White*] . . . a jury question as long as the jury is fully advised and can make that decision.
>
> In taking that, I'm going to allow, because at this point, the test is for me to determine, taken in the light most favorable to the State, to allow this matter to go forward.
>
> I'm not saying exactly how I feel or what I feel or what my ruling will be somewhere down the line, but at this point, I think taken in the light most favorable to the State, the State has made out a case for the jury to make a determination of whether or not Mr. . . . Mann was substantially interfered with.

And I will instruct the jury according to the opinion of *State v. White*.

But I will state that to me it's a very close question and like I said, I think it's a jury question, but at some point, I'm going to have to take a look at it.

Again, I will state for the record that the very nature and the facts of this case are the type of cases that I see where this especially aggravated kidnapping is used are the ones that are concerning me with regard to whether or not it is a part of the aggravated robbery.

The trial court then stated that it was denying the motion for judgment of acquittal with regard to the kidnapping charge. Following the trial, the trial court concurred with the jury in his role as the thirteenth juror. The trial court stated on the record: "I will accept the verdicts of the jury. . . . As the thirteenth juror, I concur in the verdicts of the jury. I find that they are based upon the law and evidence that's been presented and I will accept the verdicts of the jury as proper. . . ."

Following sentencing in the case, the defendants each filed a "motion for judgment of acquittal, or in the alternative, motion for new trial." At the hearing, among other issues, counsel for the defendants vigorously argued that the kidnapping charge should not have been placed before the jury because "[t]his was nothing more than what was necessary to commit the robbery." Counsel then stated:

And that's where - - and if you look at all the problems that we have with appellate judges and trial judges fretting over this and trying to figure this out, and if it's confusing to them, then how much more so is it to a jury.

. . . .

And so that's where the Court erred in even allowing it to go to the jury. So how do you correct that? Is it a new trial or is it you set aside that verdict as 13th juror? You know, I don't think it met the criteria to even go to the jury.

After listening to the arguments made with regard to the aggravated kidnapping convictions, the trial court made the following remarks on the record:

[T]he proof was that Edward Mann was accosted at the front door, was taken upstairs to his bedroom where he retrieved his wallet. Yes, there was

48

testimony that he was forced to get on his knees and yes, there was testimony that a gun was pointed at his head. He provided his wallet.

The . . . defendant then left, either struggled and was pushed down the stairs or fell down the stairs. I don't know. But shots were fired and they fled the scene. The Mann family was present. . . .

And in analyzing the facts of the case, again, some of the arguments that the defense makes with regard to the victim voluntarily goes upstairs to get this wallet or something to that effect, I don't think that that's true.

Obviously he's being forced. He is being confined and he is being moved to go get his wallet. He's taken somewhere else other than the initial confrontation area. But the crime is aggravated robbery and I think the very nature of an aggravated robbery is to obtain the victim's property.

There is a totally different and distinct argument to be made for putting a victim in a car and transporting him across [t]own to go to an ATM machine versus taking him from one room to another room. And to me, there is a difference in taking one to one room and another room and stripping them naked and leaving them lying on the floor. But to take the victim 17 steps from downstairs to upstairs to his bedroom to get his wallet out of his dresser, I have a hard time accepting that as especially aggravated kidnapping.

The Court advised under this new procedure that has been set out to find the defendant guilty of this offense, you must find beyond a reasonable doubt that the removal or confinement was to a greater degree than that necessary to commit the offense of aggravated robbery as charged. In making this determination, you may consider all the relevant facts and circumstances including, but not limited to, the follow[ing] factors.

First of all, I'm not satisfied from the proof that the removal or confinement was to a greater degree than that necessary to commit an aggravated robbery. Mr. Edward Mann was taken upstairs to get his wallet.

The nature and duration of the removal or confinement by the defendant. Again, he's taken upstairs to his room, yes. He was placed on his knees. But I don't think that that's the intent of the law that makes a separate and distinct act sufficient under double jeopardy issues to say that that's a separate offense.

49

Whether the removal or confinement occurred during the commission of the separate offense, it did. To go get the money he's got to be taken upstairs to go get the money. And I think just going from one room to another room to go get the proceeds, there has to be something more than that.

Whether the interference with the alleged victim's liberty was inher[ent] in the nature of separate offense. It was. In order to go get the money, he had to be taken to where the money was. And it's not like he [was] secreted away or put in a car and [taken] somewhere different. He's taken from one room of his house to another room of his house.

Did the removal or confinement prevent the alleged victim from summoning assistance? Again, there's nothing that indicates that that's the case. There's nothing that indicates that by taking him upstairs to his bedroom to get his wallet he was in any way prevented or confined in a way that prevented him from summoning assistance.

Did it reduce the defendant's risk of detection? Yeah. He's not standing on the street and somebody driving down the street can't see what's happening. But did it reduce his ability for there to be a detection by just taking him inside the house? I guess you can make that argument.

Did it create a significant danger or increase the alleged victim's risk of harm independent of that posed by the separate offense? Well, he had a gun pointed at him. He had a gun pointed at his head. He had a gun pointed at his head at the door, he had a gun pointed at his head going up the stairs, he had a gun pointed at his head during the course of the robbery. He had a gun pointed at him and I don't see that there is any significant increase in the alleged victim's risk of harm independent of that posed by the separate offense of aggravated robbery.

. . . .

But it's not like he was put in a closet. It's not like doors were closed or it's not like he was tied. There's nothing separate from just give me the money, I got to go get the money, and I walk over here to get the money.

. . . .

And I understand the State's argument, but I myself, personally, have

50

struggled with some of these cases and I think this newest opinion by the Supreme Court gives us a lot more leeway and a lot more guidance in what we are to do.

And fortunately or unfortunately, as a [thirteenth] juror I've been given that authority as the [thirteenth] juror to impose my position on how I feel. And I do have more background and knowledge than the jury and I do have more experience than the jury and that's part of why I'm given that authority as the [thirteenth] juror to impose my position with regard to what a jury does.

So in this particular case, . . . the Court is of the opinion that as a [thirteenth] juror I do not find that the jury followed the law. I am not going to rule that. I am going to grant a motion for judgment of acquittal.

I think there is a question for the jury to determine there, but as a [thirteenth] juror, I'm going to grant a new trial on the offense of especially aggravated kidnapping.

On October 12, 2012, the trial court then sua sponte entered the following order: On October 1, 2012 the Court heard the Motion for Judgment of Acquittal and/or Motion for a New Trial in [this ] cause. It was the intent of this Court to acquit the defendants of Especially Aggravated Kidnapping in Count 1 of the indictment in a manner that would allow the State to appeal. The Court erroneously ruled under Rule 33(d) Rules of Procedure that the defendants should be given a new trial on the charges. However, upon further reflection the Court has determined that the proper ruling should be under Rule 29(e) Rules of [Procedure] that the Motion for Judgment of Acquittal should be granted as to both defendants as to the Count One charge of Especially Aggravated Kidnapping.

Judgment sheets were entered finding the defendants not guilty of especially aggravated kidnapping, which noted that "Motion for judgment of acquittal granted as to Count 1 only."

The standard for determining whether a trial court should have granted a motion for judgment of acquittal is the same as the standard for sufficiency of the evidence. *State v. Culp*, 891 S.W.2d 232, 235 (Tenn. Crim. App. 1994). Sufficiency standards, as recited *supra*, denote that findings of guilt in criminal actions will be set aside if the evidence, viewed in the light most favorable to the State, is insufficient to support the findings by the trier of fact beyond a reasonable doubt. Tenn. R. App. P. 13(e). When the sufficiency of the evidence is challenged, the standard for review by an appellate court is whether "after

51

considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Smith*, 24 S.W.3d 274, 278 (Tenn. 2000) (quoting *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999)).

As an initial matter, the defendants challenge the appropriate standard of review in this case. Specifically, they find fault with applying the standard "that a guilty verdict, *approved by the trial court*, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory" in this case. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978) (emphasis added). The defendants contend that the verdict here was never approved by the trial court, but was rejected by the trial court as the thirteenth juror and then dismissed. The State responds that the standard is applicable because the trial court did approve the verdict as the thirteenth juror.

We agree that the standard of review quoted by the defendants is not appropriate. It would not be logical to use a standard of review that includes approval of the guilty verdict by the trial court which has set aside that guilty verdict. The appropriate standard of review is as follows:

> When a motion for judgment of acquittal is made, the trial court must favor the state with the strongest legitimate view of the evidence, including all reasonable inferences to be drawn therefrom, and discard any countervailing evidence. *Hill v. State*, 4 Tenn. Crim. App. 325, 470 S.W.2d 853 (Tenn. 1971) . . . . On appeal, the state is entitled to the strongest legitimate view of the evidence and any reasonable inferences which might be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn. 1978).

*State v. Prince*, 46 S.W.3d 785, 818 (Tenn. Crim. App. 2000).

We also reject the defendants' contention that the trial court failed to rule as the thirteenth juror in a clear and unequivocal manner because of the statements made on the record. While we have noted some confusion and some dissatisfaction with the verdicts in this case, we believe that the record is sufficient to establish that the trial court eventually made clear that the dissatisfaction with the convictions was not a thirteenth juror issue. Thus, the record does reflect proper consideration as the thirteenth juror.

We now turn to the issue before us, that being whether the trial court erroneously granted the motions for judgment of acquittal because the evidence was insufficient to support the defendants' convictions. As relevant here, especially aggravated kidnapping is knowingly removing or confining another unlawfully so as to interfere substantially with the

other's liberty, accomplished with a deadly weapon. T.C.A. §§ 39-13-302, -305. Following the *White* decision, the question of whether a removal or confinement is "essentially incidental" to an attendant felony such as aggravated robbery and not necessary to the attendant felony's completion is one to be decided by a properly-instructed jury. *State v. Terrance Antonio Cecil*, No. M2011-01210-SC-R11-CD, 2013 Tenn. Crim. App. LEXIS 637, *21 (Tenn. Aug. 12, 2013). Such an instruction includes a definition of "substantial interference" that requires a finding by the jury that the victim's removal or confinement was not essentially incidental to the accompanying felony offense. *Id*. at *22-23 (citing *White*, 362 S.W.3d at 580).

In support of its argument, the State contends that the actions taken were not merely incidental to the aggravated robbery. The State maintains that there was no need for Defendant Brewer to force victim Edward upstairs to complete the aggravated robbery. Rather, he "could have simply completed the robbery there, on the spot, taking from Edward whatever he could- perhaps only the shirt of his back." The second alternative asserted by the State is that defendant Brewer could have asked Edward where the money was and gone to retrieve it, rather than forcing him upstairs at gunpoint and then confining him on his knees. According to the State, the movement of the victim reduced defendant Brewer's risk of detection by preventing victim Edward from summoning help and increased victim Edward's risk of harm, as evidenced by the resulting melee when family members became involved. The State argues that the increased risk came as a direct result of victim Edward's removal and confinement.

The defendants contend, however, that the confinement did not go beyond that necessary to complete the robbery and was essentially incidental to it. They maintain that the State's argument ignores the critical fact that the confinement ended immediately upon completion of the robbery. They argue that this robbery's purpose was to obtain money, and the actions taken were necessary to obtain possession of that money. They also contend that the fact that other family members become involved in an altercation has no bearing on "whether Edward's de minimis confinement supported a separate kidnapping conviction."

We, like the trial court, understand the State's argument and the defendants' response. We acknowledge that this is a very fact specific determination. However, viewed in the light most favorable to the State, we conclude that the evidence presented was sufficient to allow a reasonable trier of fact to find that the movement or confinement in this case was not essentially incidental to the crime of aggravated robbery. Contrary to the defendant's position, the confinement did not end upon the completion of the robbery. Victim Edward was ordered to his knees and threatened with a gun after he had surrendered his money to defendant Brewer.

53

The defendants forced their way into a family's home to complete a robbery. The victim was forced up the stairs at gunpoint and taken to his bedroom. He was forced to an area of the home where others were present. We do agree with the State that his risk of harm was increased by the removal or confinement which occurred. As demonstrated by the proof, victim Edward's family members became involved in the fray. His unarmed mother approached defendant Brewer, who was armed with a loaded weapon. His brother attempted an attack with a sword. The melee that resulted from these actions is ample evidence that the risk of danger was in fact heightened.

Additionally, after giving his wallet to defendant Brewer, victim Edward was ordered onto his knees on the floor. Defendant Brewer continued to point the gun at him and "threatened" to kill him. Victim Edward's mother distracted defendant Brewer when she entered the room. She interceded into the event to protect victim Edward and informed defendant Brewer that he was not going to kill her son. A reasonable juror could have reasonably inferred that, absent her interjection into the situation, the confinement could have continued for a longer period of time and with even more resulting harm. In the ensuing fray, the victims all proceeded to the hallway. Defendant Brewer fell down the stairs, discharging his weapon multiple times. Although the proof is in no way overwhelming, we conclude that a rationale trier of fact could have found the defendants guilty beyond a reasonable doubt of the kidnapping offense. Thus, we must conclude that the trial court erred in granting the motions for judgment of acquittal.

The defendants raise one final argument in their briefs. They contend that if the trial court erroneously granted the motion for judgment of acquittal, which we have determined that it did, then the only remedy available to the State is a new trial because the trial court expressly rejected the verdict as the thirteen juror. We previously determined that the trial court ultimately did not grant a motion for new trial in this matter, but rather granted a motion for judgment of acquittal. As noted above, after some initial confusion, the trial court made clear that it was not rejecting the verdicts as the thirteenth juror. Thus, a new trial is not required. Rather, we remand to the trial court with instruction to re-instate the verdicts rendered by the jury.

## CONCLUSION

Based upon the foregoing, the judgments of conviction and resulting sentences are affirmed in Case 11-02360. The judgment for facilitation of robbery in Count 4, with regard to defendant Boyland, is remanded for correction to reflect the correct class of felony conviction. In Case 11-02361, the convictions for employing a firearm during the commission of a dangerous felony are reversed as to both defendants. Additionally, the defendants' convictions for facilitation of aggravated assault and aggravated assault are

54

ordered to be merged with the convictions for aggravated robbery. The judgment of conviction for Count 8 reflecting defendant Brewer's conviction for aggravated assault is remanded to specify release eligibility. Finally, we reverse the trial court's granting of the motion for judgment of acquittal as to especially aggravated kidnapping. The case is remanded for sentencing in the especially aggravated kidnapping convictions and for any further proceedings or actions necessary in accordance with this opinion. The judgments of conviction and resulting sentences are otherwise affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE